# HARRY KANE AND OTHERS v. STATE AND OTHERS.
# HERBERT P. BUETOW AND OTHERS, INTERVENERS.[1]

July 11, 1952.

No. 35,684.

*Justin D. Halpern* and *Robins, Davis & Lyons,* for appellants.
*Pierce Butler, III* and *Frank J. Danz,* for respondents.

[1]Reported in 55 N. W. (2d) 333.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court.

This action was brought under the uniform declaratory judgments act (M. S. A. c. 555) for a judgment declaring certain lots to be free and clear of a certain restrictive covenant. The real estate involved is situated in the city of St. Paul and is described as follows:

Lots one (1), two (2) and three (3), block six (6), West End-Edgcumbe, according to the plat thereof on file and of record in the office of the register of deeds of Ramsey county.

In 1937, these lots, with other property, were forfeited to the state of Minnesota for taxes. In 1945, title to the lots was registered by the state. In 1948, lots 1 and 2 were conveyed by the state to one Philip G. Ruvelson and were described in the certificate of title as follows:

"Lots one (1) and two (2), Block six (6), West End-Edgcumbe, St. Paul, Minnesota, according to the recorded plat thereof on file and of record in the office of the Register of Deeds in and for Ramsey County, Minnesota."

No encumbrances, other than the reservation of mineral rights by the state of Minnesota, were noted or memorialized upon the Ruvelson certificate of title. The same year Ruvelson sold lots 1 and 2 to Harry Kane and Mary M. Kane. The dimensions of lots 1 and 2 are exceptionally large, and it appears that each lot is capable of accommodating two substantial homes. The Kanes constructed their residence on the east 150 feet of lot 1 and attempted to sell the west 125 feet of that lot, the west 125 feet of lot 2, and the east 160 feet of lot 2. In the course of negotiations with the prospective purchasers, it was discovered that certain restrictive covenants, including a restriction on usage, were written on the reverse side of the plat of West End-Edgcumbe. Although the report of the examiner of titles of Ramsey county had disclosed the restriction on usage, it appears that the court omitted it from the decree of regis-

tration. It was also omitted from the certificate of title. It further appears that the Kanes had no knowledge of the existence of the restrictive covenant involved until it was discovered by the prospective purchasers. Thereafter, plaintiffs brought this action for judgment declaring the above-described lots to be free and clear of the foregoing encumbrance.

In all material respects, the above statement of facts is applicable to the case of the other plaintiffs, Elmer Price and Mina S. Price, owners of lot 3 in block 6, except that they purchased the lot from one S. Paul Johnson.

Defendants are the owners of land adjacent to block 6. Lots 4 and 5, constituting the remaining lots in block 6, are park property of the city of St. Paul.

The trial court found that plaintiffs Kane were the owners of lots 1 and 2 above described; that plaintiffs Price were the owners of lot 3; and that defendants and interveners (referred to hereinafter as defendants) own land adjoining, surrounding, and in close vicinity of the lots of plaintiffs. It further found that the plat of West End-Edgcumbe contained the following restrictive provisions:

"Usage:

"That none of said lots shall be used or occupied for other than private residence purposes, and no tenement building, duplex or apartment house (though restricted to residence purposes) may be erected thereon. Only one residence designed for occupancy by a single family, may be located or built upon any one of said lots, as shown upon said plat.

"Duration of Restrictions:

"That all of the building restrictions set forth shall continue and be binding upon the owners, and their heirs, successors and assigns for a period of time ending January 1, 1950, and shall automatically be continued thereafter for periods of twenty (20) years each, unless at least five (5) years prior to the expiration of this first period, or of any subsequent twenty (20) year period, the owners of a majority of the front feet of all of the lots in this subdivision which

are hereby restricted, shall execute and acknowledge an agreement or agreements in writing, releasing the land from any and all of the above restrictions as to all of the land hereby restricted, and file the same for record in the office of the Recorder of Deeds of Ramsey County, Minnesota."

The court also found that, while the plat contained numerous other restrictive provisions, the only issue in the case involved the meaning and validity of the provisions set out above; that the above-quoted paragraph entitled "Usage" is a building restriction; and that it is valid and subsisting, has not expired, and is binding upon plaintiffs, their successors and assigns, subject only to release in accordance with the terms of the above-quoted paragraph entitled "Duration of Restrictions." The court also found that the restrictions are of substantial benefit to each of the lots in the plat and to the lots belonging to plaintiffs; that they do not cast an unreasonable burden upon the use of the property; are not invalid as against public policy; and do not prevent plaintiffs from selling or disposing of their property. It was also the finding of the court that defendants would suffer irreparable damage if plaintiffs were permitted to divide their lots for the construction of more than one residence dwelling upon any one lot as platted.

The court then concluded: (1) That the relief demanded by plaintiffs be denied; (2) that plaintiffs be enjoined (a) from permitting more than one residence designed for occupancy by a single family to be located and built upon any one of the lots shown upon the plat of West End-Edgcumbe, (b) from dividing and selling the westerly 125 feet of lot 1 for the construction of a separate dwelling thereon, (c) from dividing lots 2 and 3 and selling the same as divided for the construction of two residence dwellings on each of said lots, and (d) from violating any restriction contained in the provisions of said plat restricting the use of each of the platted lots thereof to one residence building; and (3) that the certified copy of the judgment to be entered be memorialized by the registrar of

titles in and for Ramsey county on certain certificates of title, numbered in said conclusion, pertaining to the lots.

Plaintiffs assign as error that the conclusions of law and the judgment entered thereon are contrary to the law governing the incidents of ownership of registered land.

The only legal issue raised by plaintiffs is whether a good-faith purchaser, for value, of registered land may obtain such land free and clear of a restrictive covenant which is not memorialized upon the previous owner's certificate of title.

Plaintiffs argue that the Minnesota statutes clearly and expressly provide that a good-faith purchaser, for value, of registered land obtains such land free and clear of any encumbrance, such as a restrictive covenant, which is not memorialized upon the previous owner's certificate of title. (It is undisputed here that no restrictive covenant as to usage was shown or noted under "MEMORIAL of Estates, Easements or Charges on the Land described" on the certificate of the previous owner, Ruvelson.)

■ At the outset, it appears well settled that a restrictive covenant such as the one referred to in the instant case is an encumbrance. Foster v. Foster, 62 N. H. 46; Ayling v. Kramer, 133 Mass. 12.

■ M. S. A. 508.25 provides under "Rights of person holding certificate of title":

"Every person receiving a certificate of title pursuant to a decree of registration and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration shall hold the same free from all encumbrances and adverse claims, excepting only such estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the office of the registrar, * * *."

It also excepts six expressly named "rights or encumbrances" which are not involved here.

Plaintiffs also argue that if defendants have been damaged their exclusive remedy is an action for damages against the registered land assurance fund, as provided in § 508.76, as follows:

"Any person who, without negligence on his part, sustains any loss or damage by reason of any omission, mistake or misfeasance of the registrar or his deputy, or of any examiner or of any clerk of court, or of his deputy, in the performance of their respective duties under this law, and any person who, without negligence on his part, is wrongfully deprived of any land or of any interest therein by the registration thereof, or by reason of the registration of any other person, as the owner of such land, or by reason of any mistake, omission, or misdescription in any certificate of title, or in any entry or memorial, or by any cancelation, in the register of titles, and who, by the provisions of this law, is precluded from bringing an action for the recovery of such land, or of any interest therein, or from enforcing any claim or lien upon the same, may institute an action in the district court to recover compensation out of the assurance fund for such loss or damage."

The real conflict in the case before us narrows down to the question whether plaintiffs are bound by the restrictive covenant as to usage on the reverse side of the plat, although no explicit reference to it was shown on the certificate of title of the previous owner. Plaintiffs claim that they are not so bound. Defendants, on the other hand, argue that a purchaser of registered property has notice of the contents of the plat where the land is described according to the plat, even in the absence of express notice, and that, where documents such as the certificate of title involved herein described the land "according to the recorded plat," there is a clear incorporation of the plat by reference.

■ The facts of this case present an interesting and important question, considered for the first time by this court, and attorneys for both parties have presented their positions well. Defendants' only serious argument is that the reference in the certificate to the plat on which the encumbrance was written constituted a *noting* of the encumbrance within the meaning of the Torrens act (M. S. A. c. 508). The reference to the plat, without question, incorporates into the certificate the physical location of the property and undoubtedly would be held to refer to those matters which go to

identifying the land and locating streets, alleys, etc. For the proposition that the reference to the plat in the certificate constitutes a *noting* of the encumbrance, defendants cite Bryant v. Gustafson, 230 Minn. 1, 8, 40 N. W. (2d) 427, 432, where this court said:

"* * * He who purchases a lot with reference to a plat is deemed to have thereby purchased, as appurtenant to the lot, all the advantages, privileges, rights, and easements which the plat represents as belonging to the lot and as belonging to the owner thereof as a resident of the platted area, and this principle is applicable not merely to the roads and streets upon which the purchased lot abuts, but to all roads and streets of advantage or utility to the platted area as a whole."

The court in the Bryant case quoted from Gilbert v. Emerson, 60 Minn. 62, 66, 61 N. W. 820, 822, saying:

"* * * It is not merely the street or alley upon which the purchased lot may abut that the purchaser has the privilege of using or enjoying, but all the easements, rights, privileges, and advantages which the plat represents."

By way of distinction, the court was not considering registered land in the Bryant case, but unregistered land.

In our opinion, there is nothing in the Bryant case to support the proposition that a reference to the plat in a Torrens certificate constitutes a *noting* of an encumbrance of the type here involved within the meaning of the Torrens act. The court said in that case that where, in a conveyance of unregistered land, reference is made to the plat the purchaser is bound by what is contained in the plat. The court held that a purchaser, under such circumstances, is bound by the dedication of a street or roadway made for the benefit of adjoining landowners, but this holding casts no light on the question whether a reference to the plat by way of description in a Torrens certificate is a sufficient *noting* of an encumbrance contained therein.

Webster's New International Dictionary (2 ed.) (1947) p. 1884, defines a "plat" as "A plan, map, or chart; esp., a plan of a town site, a division of land, or the like."

A "plat" is defined in 32 Wd. & Phr. (Perm. ed.) p. 630, as—

"a subdivision of land into lots, streets, and alleys, marked upon the earth, and represented on paper; * * * the * * * platting * * * implies that the land had been surveyed, and that such survey was marked on the ground, so that the streets, blocks, and lots could be identified. McDaniel v. Mace, 47 Iowa, 509, 510; Burke v. McCowen, 47 P. 367, 368, 115 Cal. 481."

The statute requires an accurate description of the land and contemplates a noting explicitly of the encumbrances outstanding, both in the decree of registration (§ 508.23) and in the certificate of title (§§ 508.34, 508.35). The reference to the plat clearly is made for the purpose of describing the property; and, in view of the wording and purpose of the statute, it cannot be held to constitute a *noting* of the encumbrance contained in the plat.

The question before us is whether a good-faith purchaser, for value, of registered land obtains such land free and clear of a restrictive covenant or encumbrance which is not referred to in the certificate of title under the memorial of estates, easements, or charges on the land described. In other words, must a purchaser of registered land, in addition to being charged with notice of estates, mortgages, liens, charges, and interests noted on the previous owner's certificate of title, also go directly to the plat to ascertain whether there may be any other restrictive covenants or encumbrances noted on the plat which are not shown on the certificate of title? Under § 508.25, it is our opinion that he is not required to do so. It seems to us that if we were to hold otherwise, under the facts and circumstances of the instant case, it would tend to create confusion which would jeopardize the stability and purpose of the Torrens law.

The manifest purpose of the Torrens system, as stated in 3 Devlin, Real Estate, Deeds (3 ed.) § 1439, is—

"first, to secure by a decree of court, or other similar proceeding, a title which shall be impregnable against any attack, and, when this title is once determined, to provide that all subsequent transfers, incumbrances, or proceedings affecting the title shall be placed on a page of the register and marked on the memorial of title. A purchaser may accept this memorial as truly stating the title, and may disregard any claim not so appearing."

In In re Application of Juran, 178 Minn. 55, 58, 226 N. W. 201, 202, this court defined the purpose of the Torrens law in the following language:

"The purpose of the Torrens law is to establish an indefeasible title free from any and all rights or claims not registered with the registrar of titles, with certain unimportant exceptions, to the end that anyone may deal with such property with the assurance that the only rights or claims of which he need take notice are those so registered. The law was framed to accomplish that purpose; and it establishes rules in respect to registered land which differ widely from those which apply in the case of unregistered land. It provides that the holder of a certificate of title of registered land 'shall hold the same free from all incumbrances, and adverse claims, excepting only' those noted on the last certificate of title and certain other specified rights or claims not important here."

Quoting from the syllabus in the Juran case, this court again said in Cook v. Luettich, 191 Minn. 6, 8, 252 N. W. 649:

"1. The Torrens law intends that all titles registered thereunder shall be free from all unregistered rights or claims except those specifically named, and unregistered deeds or contracts do not affect such titles nor create any interest in the land.

"2. The act abrogates the doctrine of constructive notice except as to matters noted on the certificate of title, but not the effect to be given to actual notice of unregistered conveyances."

In view of the fact that we consider the restrictive covenant as to usage an encumbrance (Foster v. Foster, 62 N. H. 46; Ayling v. Kramer, 133 Mass. 12), we hold that plaintiffs, as good-faith pur-

chasers, for value, of the registered land involved here, obtained such land free and clear of the restrictive covenant involved because of the fact that no notation of the restrictive covenant was noted or shown on the certificate of title of the previous owner.

Reversed.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On October 24, 1952, the following opinion was filed:

PER CURIAM.

We have carefully considered the appeal from the clerk's taxation of costs and disbursements, particularly with reference to certain photostats which respondents claim unduly lengthened the record. With the exception of one or two, which might have been eliminated, we found it necessary to refer to these photostats in connection with our review of the case. It is therefore our opinion that the costs and disbursements as allowed by the clerk should stand.

Clerk's taxation affirmed.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.