In re Karen M. STROM, a/k/a Karen M. Olson, a/k/a Karen M. Strom Olson, Debtor.

PALATINE NATIONAL BANK OF PALATINE, ILLINOIS, Plaintiff,

v.

Karen M. STROM, a/k/a Karen M. Olson, a/k/a Karen M. Strom Olson, Defendant.

Bankruptcy No. 4–87–179.
Adv. No. 4–87–387.

United States Bankruptcy Court, D. Minnesota.

March 14, 1989.

Richard D. Donohoo, Maun, Green, Hayes, Simon Johanneson and Brehl, Seth M. Colton, Maun, Green, Hayes, Simon Johanneson and Brehl, St. Paul, Minn., for plaintiff/petitioner.

Joseph A. Nilan, Lang, Pauly & Gregerson, Ltd., Minneapolis, Minn., for defendant/respondent.

ROBERT J. KRESSEL, Chief Judge.

This proceeding came on for trial on the plaintiff's complaint seeking a determination of the validity, priority and extent of its lien against the Carlton Bloomington Dinner Theatre property. Richard Donohoo and Seth Colton appeared for the plaintiff. Joseph Nilan appeared for the defendant. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and (K).

Based on the documents, stipulated facts and written arguments submitted by the parties, and the file in this proceeding, I make the following memorandum order:

## FACTUAL BACKGROUND

Karen Strom is the debtor in possession in a Chapter 11 case filed on January 20, 1987. At the time of filing, Strom listed among her assets a vendee's interest, under a contract for deed from the Morris Chalfen trust, in approximately 16 acres of registered real property in Bloomington, Minnesota, referred to as the Carlton Bloomington Dinner Theater property. This property and the respective rights of the parties to the proceeds of its sale [1] are the focus of this dispute.

At the time of her chapter 11 filing, Strom was president of the Carlton Bloomington Dinner Theatre, Inc. CBDTI was incorporated on January 19, 1978. Carl Berndt and Kenneth Olson were CBDTI's original shareholders, officers, and directors. Berndt and Olson each purchased 500 shares of CBDTI stock for $1.00 per share. On June 28, 1978, CBDTI exercised an option to purchase the Carlton property from Morris and Beverly Chalfen for $950,000.00. CBDTI purchased the property with the intent to renovate it into a dinner theatre.[2]

Strom and Olson were married in August of 1978. On August 31, 1978, Olson resigned as a director and secretary/treasurer of CBDTI, and, with the corporation's approval, transferred his 500 shares of CBDTI stock to Strom. Strom paid $500.00 for the stock. On September 12, 1978, First Financial Savings & Loan Association of Downers Grove, Illinois, agreed to loan $1,600,000.00 to CBDTI to act as a first mortgage wrap-around loan on the property. The loan was secured by personal guarantees from Berndt & Strom. On October 31, 1979, CBDTI redeemed Berndt's 500 shares of CBDTI stock for $500.00. The next day, Strom purchased the Carlton property from CBDTI by assuming CBDTI's $1,578,400.03 debt on the proper-

---

**1.** Prior to the trial in this proceeding, Strom sold the Carlton property to the City of Bloomington for $6,500,000.00, less closing costs. By order dated September 16, 1988, I approved the sale free and clear of all liens, encumbrances, and other interests. The order further directed that all liens, encumbrances and other interests would attach to the proceeds of the sale after payment of Citicorp's first mortgage, real estate taxes, and other closing costs. Net sale proceeds of $3,985,659.05 were deposited in an escrow account at Marquette Bank, Minneapolis in early October, 1988. Palatine's arguments and this order address Palatine's entitlement to a lien on the Carlton property. However, in view of Strom's sale of the property, Palatine is really seeking a lien on the sale proceeds based on its alleged underlying lien on the property.

**2.** The property had originally been built as the home of the Minneapolis Skippers, a professional bowling team.

ty. Strom then leased the property back to CBDTI under a long-term lease.

CBDTI filed a petition for relief under chapter 11 on June 13, 1986. That case was converted to chapter 7 on July 1, 1987, and the dinner theater suspended operations that same day.

This proceeding is the most recent in a series of efforts by Palatine National Bank of Palatine, Illinois, to collect on four loans it made to Olson, or to business associates and business entities of Olson. In 1980 and 1984, Palatine commenced several actions in Hennepin County District Court, and obtained four separate judgments against Olson, or against Olson jointly and severally with one or more other entities, in the sum of $851,095.85 plus interest.[3] Two of the four judgments were subsequently satisfied. In an effort to enforce the two unsatisfied judgments, Palatine filed a notice of lis pendens against the Carlton property on March 27, 1985, and commenced an action in Hennepin County District Court against Olson, Strom, CBDTI, and sixteen other individuals and entities.[4] In its complaint, Palatine alleged that various fraudu-

lent conveyances were made by the defendants to that action. Palatine requested that the conveyances be set aside and that an equitable lien be placed on all assets of the defendants. That action was stayed against Olson by the filing of his chapter 7 petition on October 20, 1986,[5] and against Strom by the filing of her chapter 11 petition on January 20, 1987.[6]

Palatine commenced this adversary proceeding against Strom on December 1, 1987. Palatine's complaint asserted that its filing of a lis pendens on March 27, 1985, created a valid lien against real property in which Strom had an interest at the commencement of her chapter 11 case.[7] Palatine sought a determination that its lien against the property was valid and "prior to all subsequent liens."[8] In a subsequent memorandum, Palatine shifted from reliance on the notice of lis pendens to a conclusory assertion that the judgment it obtained against Olson created a judgment lien on property owned by Strom. In a subsequent letter to me, Palatine acknowledged that the filing of a notice of lis pendens did not create a lien[9] and indicated

---

3. None of these judgments was against Strom or CBDTI.

4. Although Palatine makes many references to this state court action, there is no evidence as to when the action was actually commenced. Accordingly, I will assume that the action was commenced at about the same time the notice of lis pendens was filed.

5. Palatine subsequently filed a complaint against Olson in bankruptcy court, objecting to his discharge and requesting that his debt to Palatine be excepted from discharge. Judge O'Brien found that Palatine failed to show by clear and convincing evidence that Olson's debt to Palatine was incurred through fraud under § 523(a)(2)(A). *Palatine Nat'l Bank v. Olson (In re Olson)*, Adv. No. 3–87–23 (Bktcy.D.Minn. July 11, 1988). In addition, Judge O'Brien held that Palatine failed to show that Olson, within one year prior to the filing of his petition, transferred, concealed or removed property with the intent to hinder, delay or defraud Palatine, so as to justify a bar of his discharge under § 727(a)(2)(A). However, Olson was denied a discharge under § 727(a)(4)(A) for giving false oaths and making false accounts in connection with his bankruptcy case. These false accounts concerned what Judge O'Brien found to be Olson's beneficial interest in the Carlton property.

6. Prior to the filing of her chapter 11 petition, Strom moved to have the claims against her dismissed and have the lis pendens discharged and extinguished. Hennepin County District Court Judge Delila Pierce granted Strom's motion on February 27, 1987, without knowledge that Strom had filed bankruptcy while the motion was under consideration. Judge Pierce subsequently vacated her order discharging and extinguishing the lis pendens, although the dismissal was not inconsistent with any provision of bankruptcy law.

7. Among the 335 documents submitted, no one provided a copy of the notice of lis pendens on which Palatine's case, as originally pled, was based.

8. Since none of the other lienholders were made parties to this proceeding, I could not have determined any priority of Palatine's lien.

9. Palatine wisely abandoned this theory. Under Minnesota law, the sole function of a lis pendens is to give notice of the pendency of an action. *Trask v. Bodson*, 141 Minn. 114, 117, 169 N.W. 489 (1918); *see also* Minn.Stat. § 557.02. The filing of a notice of lis pendens does not create a lien on property. *See, e.g., Green Hill Corp. v. Kim*, 842 F.2d 742, 744 (4th Cir.1988) ("Under Virginia law, the filing of a

its intent to proceed under the Uniform Fraudulent Conveyance Act [10] and the Uniform Fraudulent Transfer Act.[11] In both its pre- and post-trial memoranda, Palatine focused on the Uniform Fraudulent Conveyance Act. Most recently, in its post-trial reply memorandum, Palatine indicated it intended to proceed under the Uniform Fraudulent Transfer Act.

Two weeks were allotted for trial of this proceeding. Palatine's final witness and exhibit lists indicated Palatine's intent to call fourteen witnesses and introduce 106 documents. Strom's final witness and exhibit lists indicated her intent to call 38 witnesses and introduce 245 documents. The trial actually lasted less than one full day. Only one witness was called and examined. Palatine offered 106 exhibits and Strom offered 229 exhibits and all were received without objection. The parties agreed to submit this proceeding based on the exhibits, certain stipulated facts and post-trial briefs.

## DISCUSSION

Palatine asserts that it holds a valid lien on the Carlton property for two reasons. First, Palatine argues that its judgment against Olson created a judgment lien on the Carlton property which is enforceable despite Olson's allegedly fraudulent conveyance of that property to Strom. Alternatively, Palatine argues that its lien on the Carlton property arises as a direct result of Olson's fraudulent conveyance, pursuant to § 513.28 of the Uniform Fraudulent Conveyance Act. I will address these arguments separately.

memorandum lis pendens neither creates nor enforces a lien"); *Sierra v. Santana (In re Sierra),* 79 B.R. 89, 91 (Bankr.S.D.Fla.1987) ("Under Florida law, the recording of a Notice of Lis Pendens serves as notice of the pendency of an action relating to the property described in the notice ... There is no indication ... that the filing and recording of a lis pendens constitutes a lien ...").

**10.** Minn.Stat. § 513.20 *et seq.,* repealed by the Uniform Fraudulent Transfer Act, 1987 Minn. Laws c. 19, § 12.

### I. *Palatine's Alleged Judgment Lien*

Palatine's claim to an enforceable judgment lien on the Carlton property is based on its assumption that its judgment against Olson attached to the Carlton property. However, I find that Palatine's judgment never attached to the Carlton property. Hence, Palatine has no enforceable rights in that property arising from its judgment against Olson.

#### A. "Property ... Owned by the Judgment Debtor"

Minnesota Statute § 548.09, subd. 1, provides in relevant part:

Except as provided in § 548.091, every judgment requiring the payment of money shall be docketed by the court administrator upon its entry ... From the time of docketing the judgment is a lien, in the amount unpaid, upon *all real property* in the county then or thereafter *owned by the judgment debtor,* but it is not a lien upon registered land unless it is also filed pursuant to sections 508.63 and 508A.63 ... [emphasis added].

Palatine had judgments against Olson, but did not have judgments against Strom or CBDTI. CBDTI owned the Carlton Property from June 28, 1978, until November 1, 1979, when it sold the property to Strom. Although Olson had a fifty percent ownership interest in CBDTI until August 31, 1978, he never had an ownership interest in the Carlton property. Therefore, the Carlton property was never "property ... owned by the judgment debtor" and Palatine's judgment against Olson could not and did not attach to that property.[12]

**11.** Minn.Stat. §§ 513.41 *et seq.* This law became effective August 1, 1987. Minn.Stat. § 645.02.

**12.** Hennepin County District Court Judge, Delila Pierce, in her memorandum regarding the discharge of the lis pendens, found that the Carlton property had "never been owned by Defendant Kenneth P. Olson personally or by any corporation in which he has had an interest." While I agree that Olson never personally owned the Carlton property, there is uncontroverted evidence that CBDTI owned the property for 16 months and that Olson was a shareholder in CBDTI for 2 of those 16 months.

### (B) Registered Property

██ Even assuming Olson had an interest in the Carlton property to which Palatine's judgment could attach, Palatine is not entitled to a judgment lien on that property, since it failed to comply with the statutory requirements for obtaining a judgment lien on registered land. Minnesota Statute § 548.09, subd. 1 provides that a judgment "is not a lien upon registered land unless it is also filed pursuant to sections 508.63 and 508A.63."[13] Those sections require any person claiming a lien on registered land to file with the registrar of titles "a certified copy of the judgment, together with a written statement containing a description of each parcel of land in which the judgment debtor has a registered interest and upon which the lien is claimed." Minn.Stat. §§ 508.63 and 508A.63. There is no evidence that Palatine filed a certified copy of its judgment or a written statement with the Hennepin County Recorder. The certificate of title to the Carlton property makes no reference whatsoever to Palatine's judgment against Olson. Therefore, Palatine is not entitled to a judgment lien on the registered Carlton property.

### (C) Bankruptcy Code § 544(a)(3)

██ Palatine's judgment against Olson did not attach to the Carlton property. However, even if it did, Palatine's judgment lien would be avoidable by Strom as debtor in possession under Bankruptcy Code § 544(a)(3). That section provides:

(a) the trustee[14] shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

.    .    .    .    .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). Under this section, a trustee or debtor in possession may avoid a lien against property of the estate if, under state law, a hypothetical bona fide purchaser of the property from the debtor could have avoided the lien as of the date of bankruptcy. *In re Iowa–Missouri Realty Co.*, 86 B.R. 617, 619 (Bktcy.W.D.Mo.1988). Accordingly:

[t]he court, under 544(a)(3), must look to Minnesota real property law in order to determine the accoutrements of the bona fide purchaser status in this state and to determine whether a bona fide purchaser from the debtor could have avoided the conveyance . . .

*Beutel v. Joanis (In re Inv. Sales Diversified, Inc.),* 38 B.R. 446, 453 (Bktcy.D.Minn. 1984).

Under § 544(a), the trustee and debtor in possession are not bound by actual notice of claims adverse to their title. Therefore, any actual knowledge Strom had concerning Palatine's judgment against her husband will not prevent her, acting as debtor in possession, from asserting the rights of a hypothetical purchaser without such knowledge. However, the trustee and debtor in possession are charged with constructive notice of claims contrary to their title under § 544(a)(3) if an otherwise bona fide purchaser is charged with constructive notice under Minnesota real property law. *Beutel v. Joanis (In re Inv. Sales Diversified, Inc.),* 38 B.R. 446, 453 (Bktcy.D.Minn. 1984).

---

**13.** Chapter 508 of the Minnesota Statutes governs the procedures for conveyancing and registration of real estate. "The procedures for registration under sections 508A.01 to 508A.85 provide an alternative to registration under chapter 508, and are intended for uncontested titles." Minn.Stat. § 508A.01, subd. 1.

**14.** Subject to certain limitations, a debtor-in-possession has all the rights and powers of a trustee. 11 U.S.C. § 1107(a).

Under Minnesota law, a bona fide purchaser of registered land is not charged with constructive notice of claims contrary to his or her title if those claims are not noted on the certificate of title. *In re Juran*, 178 Minn. 55, 60, 226 N.W. 201 (1929) (Minnesota law governing Torrens, or registered property "abrogates the doctrine of constructive notice except as to matters noted on the certificate of title"); *See also Horgan v. Sargent*, 182 Minn. 100, 105, 233 N.W. 866 (1930); *United States v. Ryan*, 124 F.Supp. 1 (D.Minn. 1954). In *Kane v. State*, 237 Minn. 261, 55 N.W.2d 333, 337 (1952), the Minnesota Supreme Court addressed whether a good faith purchaser of registered land obtained that land free and clear of restrictive covenants or encumbrances which did not appear on the certificate of title. The court examined Minnesota Statute § 508.25, which provides:

> Every person receiving a certificate of title pursuant to a decree of registration and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration shall hold it free from all encumbrances and adverse claims, excepting only the estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the office of the registrar ... [15]

The court held that, under § 508.25, the purchaser was not bound by restrictions or encumbrances not noted on the certificate of title. Therefore, because a bona fide purchaser of registered land is not charged

with constructive notice of matters not noted on the certificate of title, the trustee and debtor in possession likewise are not charged with constructive notice of matters not noted on that certificate.

Because Olson never had a ownership interest in the property, Palatine's judgment against him never attached to or otherwise affected the title to that property. In addition, Palatine failed to comply with the requirements for obtaining a judgment on registered land. Therefore, its judgment was not noted on the certificate of title to the Carlton property.[16] Strom is not charged with constructive notice of matters not noted on that certificate. Therefore, even assuming Palatine had a judgment lien against the Carlton property, Strom, in her status as a bona fide purchaser under § 544(a)(3), could avoid that lien.

## II. *Lien Arising From Fraudulent Conveyance*

### A. Minnesota Statute § 513.28

Palatine alternatively argues that it has a lien on the Carlton property "as a direct result" of Olson's allegedly fraudulent conveyance of that property to Strom. Palatine asserts that Olson conveyed the Carlton property to Strom. Palatine further asserts that the conveyance was fraudulent as to Palatine because Palatine had a judgment against Olson. Hence, Palatine argues that the fraudulent conveyance gives rise to a lien on the fraudulently conveyed property pursuant to § 513.28(1)(b) of the

---

**15.** Section 508.25 also excepts from its application:

(1) liens, claims or rights arising or existing under the laws or the Constitution of the United States, which this state cannot require to appear of record;

(2) the lien of any real property tax or special assessment for which the land has not been sold at the date of the certificate of title;

(3) any lease for a period not exceeding three years when there is actual occupation of the premises thereunder;

(4) all rights in public highways upon the land;

(5) the right of appeal, or right to appear and contest the application, as is allowed by this chapter;

(6) the rights of any person in possession under deed or contract for deed from the owner of the certificate of title;

(7) any outstanding mechanics lien rights which may exist under sections 514.01 to 514.-17.

None of these exceptions apply so as to charge Strom with constructive notice of Palatine's alleged judgment lien on the Carlton property.

**16.** The only reference to Palatine on the certificate of title relates to the filing of its notice of lis pendens. As noted, that lis pendens did not create a lien on the property, but merely provided notice of the pendency of Palatine's action, which was stayed by Strom's chapter 11 filing before any judgment was rendered or any lien imposed.

Uniform Fraudulent Conveyance Act.[17]

■ Palatine's argument is based on an erroneous interpretation of both the facts and the applicable law and must fail. Section 513.28 provides:

(1) where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser:

(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

(b) Disregard the conveyance and attach or levy execution upon the property conveyed.

Minn.Stat. § 513.28, *repealed by* Uniform Fraudulent Transfer Act, 1987 Minn. Laws c. 19, § 12. This section makes the imposition of a lien on fraudulently conveyed property a potential remedy for a prevailing creditor in a fraudulent conveyance action. Contrary to Palatine's position, the lien does not arise automatically or immediately as a result of the allegedly fraudulent conveyance. Instead, once a creditor establishes that a fraudulent conveyance occurred, the court may impose a lien on the fraudulently conveyed property in favor of that creditor.

Palatine's Hennepin County District Court fraudulent conveyance action was stayed against Strom by the filing of her chapter 11 petition. Palatine never established the existence of a fraudulent conveyance in that action. Accordingly, Palatine was not entitled to a lien or any other remedy affecting the Carlton property before Strom's petition was filed, nor had the Hennepin County District Court granted Palatine a lien or any other remedy available under Minnesota Statute § 513.28. Because Palatine had no lien against the Carlton property at the time Strom's chapter 11 petition was filed, it has no lien to enforce against the sale proceeds of that property.

### B. Bankruptcy Code §§ 544(b) and 548(a)

Palatine did not have a lien against the Carlton property pursuant to § 513.28 of the Uniform Fraudulent Conveyance Act at the time Strom's chapter 11 petition was filed. Having failed to obtain such a lien in Hennepin County District Court, Palatine now requests the same relief in bankruptcy court. In doing so, Palatine is actually attempting to exercise avoidance powers which both the Bankruptcy Code and the case law in this circuit reserve for the trustee in Olson's chapter 7 bankruptcy case.

The Bankruptcy Code provides two mechanisms by which fraudulent conveyances may be avoided. Section 548 authorizes the trustee to avoid any transfer of an interest of the debtor in property made with the actual intent to hinder, delay or defraud creditors, or for which the then insolvent debtor received less than reason-

---

17. Over the one year period since the filing of this proceeding, Palatine's legal theory evolved from reliance on its notice of lis pendens to the judgment lien and fraudulent conveyance theories addressed in this order. As to the latter theory, Palatine seems unable to decide whether to proceed under the now repealed Uniform Fraudulent Conveyance Act or the Uniform Fraudulent Transfer Act which replaced it. Palatine's post-trial brief discusses at length its entitlement to a lien under § 513.28 of the Uniform Fraudulent Conveyance Act. However, in its reply brief, Palatine again shifts gears, stating:

Contrary to Strom's assertion ... Palatine is proceeding under the newly enacted Uniform Fraudulent Transfers Act. Minnesota Statutes Section 645.35 authorizes Palatine to choose

whether to proceed under the repealed Uniform Fraudulent Conveyances Act or the newly enacted Uniform Fraudulent Transfers Act

...

While Minnesota Statute § 645.35 may authorize Palatine to choose between the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act, nothing authorizes Palatine to make that choice nine weeks after trial in a reply memorandum to Strom's post-trial memorandum. This eleventh hour effort by Palatine to assert a new legal theory is completely inappropriate. Accordingly, I will apply the Uniform Fraudulent Conveyance Act, since it was that law upon which Palatine originally relied and upon which Strom based her defense. However, regardless of which Act is applied, the result is the same.

ably equivalent value. 11 U.S.C. § 548(a)(1) and (2). Section 544(b) authorizes the trustee to avoid any conveyances which an unsecured creditor could have avoided under applicable state law. 11 U.S.C. § 544(b). Under Minnesota law, a creditor may set aside fraudulent conveyances. *See* Minn.Stat. § 513.20 *et seq.*, repealed by Uniform Fraudulent Transfer Act, 1987 Minn. Laws c. 19, § 12; Minn. Stat. § 513.41 *et seq.* Section 1107 provides that, subject to certain limitations, a debtor in possession has all the rights and powers of a trustee. 11 U.S.C. § 1107(a). Accordingly, the Bankruptcy Code expressly vests only the trustee and the debtor in possession with authority to avoid fraudulent transfers.

■ An individual creditor lacks standing to pursue a fraudulent conveyance action. *Nebraska State Bank v. Jones,* 846 F.2d 477 (8th Cir.1988). In *Jones,* the Bank sought to set aside alleged fraudulent conveyances pursuant to Nebraska's Uniform Fraudulent Conveyance Act, Neb.Rev.Stat. §§ 36–601–613 (1984). The Eighth Circuit affirmed the district court's dismissal of the actions, holding that the Bank's fraudulent conveyance actions were, in effect, attempts to exercise the avoidance powers of § 544(b). The Bank, as a single creditor, lacked standing to exercise those powers.[18]

Palatine, like Nebraska State Bank, lacks standing to pursue its action against Strom to set aside Olson's allegedly fraudulent conveyance of the Carlton property. Only the trustee in Olson's bankruptcy case has such standing.

C. Minnesota Statutes §§ 513.23–.26

■ Even assuming Palatine had standing to pursue its fraudulent conveyance action, or had requested and obtained permission to institute the action itself, Pala-

tine has failed to establish the most fundamental element of a fraudulent conveyance under any of the sections of the Uniform Fraudulent Conveyance Act on which Palatine relies. Palatine has failed to establish a conveyance of the Carlton property by its judgment debtor, Olson.[19] Minnesota Statute §§ 513.23–.26 provide that a conveyance is fraudulent as to creditors if the transferor is or will be rendered insolvent, if the conveyance is made without fair consideration when the transferor is about to incur debts or engage in a business with unreasonably small capital, or is made with actual intent to hinder, delay or defraud present or future creditors. Minn.Stat. §§ 513.23, 513.24, 513.25, and 513.26, repealed by the Uniform Fraudulent Transfer Act, 1987 Minn. Laws, 19, § 12. Although the statutes do not expressly state, I think it is clear that the creditors to which the statutes refer are the creditors of the transferor. In this case, it is undisputed that Palatine is a creditor of Olson's. However, it is at this point that Palatine's fraudulent conveyance analysis breaks down. As discussed, Olson never had an ownership interest in the Carlton property. Hence, he had no title or interest in that property to convey to Strom or anyone else. Accordingly, there was no conveyance of the Carlton property by Olson which could have been fraudulent as to Palatine, so as to entitle Palatine to a lien on that property. Because Palatine has not even established the existence of a conveyance by Olson of the Carlton property, I need not address the other elements required by the Uniform Fraudulent Conveyance Act.

D. Statute of Limitations

Finally, Strom argues that Palatine's fraudulent conveyance action is barred by

---

**18.** *See also First State Bank of Wykoff v. Grell (In re Grell),* 83 B.R. 652 (Bankr.D.Minn.1988) (Bank had no standing to prosecute a fraudulent conveyance action on behalf of the estate).

**19.** Palatine submitted many documents and devoted substantial portions of its memoranda to transactions involving Olson and a variety of corporations and partnerships in which he had an interest. However, since Palatine seeks to enforce a lien on the Carlton property only, it is the conveyance of that property Palatine must establish was fraudulent.

the statute of limitations. An action to set aside a fraudulent conveyance is one "for relief on the ground of fraud" and must be commenced within six years after "discovery by the aggrieved party of the facts constituting the fraud." [20] *Schmitt v. Hager*, 88 Minn. 413, 415, 93 N.W. 110 (1903); Minn.Stat. § 541.05, subd. 1(6).

Palatine commenced this adversary proceeding over nine years after the allegedly fraudulent conveyance of the Carlton property to Strom. In its defense, Palatine asserts that "Strom has failed to provide any evidence indicating the dates ... Palatine learned of Olson's various fraudulent conveyances." However, if Palatine claims that the running of the statute was suspended until its discovery of the alleged fraud, Palatine, not Strom, has the burden of proving it did not discover the fraud until within six years before the commencement of this proceeding. *Olesen v. Retzlaff*, 184 Minn. 624, 238 N.W. 12, *aff'd,* 184 Minn. 624, 239 N.W. 672 (1931). Despite the volume of documents submitted, there is no concrete evidence as to when Palatine discovered the allegedly fraudulent conveyance.[21] I find that Palatine has failed to carry its burden of proof on this issue. Absent evidence of when Palatine discovered the fraud, I find that the six year statute of limitations began to run on November 1, 1979, when the conveyance occurred. At issue then is whether Palatine's filing of its fraudulent conveyance action in Henne-

pin County District Court tolled the statute. If it did not, the statute expired before Strom filed her chapter 11 petition, and Palatine's adversary proceeding, to the extent it is based on the Uniform Fraudulent Conveyance Act, is untimely.

The statute of limitations may be equitably tolled if (1) the plaintiff gave timely notice to the defendant of the plaintiff's claim; (2) the resultant delay did not cause prejudice to the defendant's position; and (3) the plaintiff acted reasonably and in good faith. *Ervin v. Los Angeles County*, 848 F.2d 1018, 1019 (9th Cir.1988). These same criteria were applied by the Eighth Circuit in *Billings v. Chicago R.I. & P.R. Co.*, 581 F.2d 707 (8th Cir.1978). There, the plaintiff filed a FELA action in an Illinois state court and service of process was made on the defendant. However, the action was subsequently dismissed because of improper venue. The plaintiff then filed an FELA action in federal district court. That action was filed more than three years after the plaintiff's injury occurred. The Eighth Circuit found that the applicable three year statute of limitations was tolled during the pendency of the state court action. The defendant was not surprised by the federal court action. Rather, it had been alerted to the existence of a controversy when the plaintiff filed his identical state court action. Nor had the defendant claimed it was prejudiced by being required to defend the federal court

---

**20.** Cases pre-dating Minnesota Statute § 541.05 provided that a judgment creditor's right of action to set aside a fraudulent conveyance did not accrue until the judgment was docketed in the county where the fraudulently conveyed property was located. *Rounds v. Green*, 29 Minn. 139, 12 N.W. 454 (1882). However, I think § 541.05 supercedes *Rounds*. Section 541.05(1)(6) is clear in providing that a cause of action for fraud accrues when the fraud is discovered.

**21.** Palatine makes the unsupported assertion that it filed its notice of lis pendens immediately upon discovering the fraudulent conveyance of the Carlton property. However, the evidence suggests that Palatine knew or participated in Olson's allegedly fraudulent conveyances, or his so-called "burial of assets," as early as 1976. In

*Palatine Nat'l Bank v. Olson (In re Olson)*, 98 B.R. 944, 949–50 (Bktcy.D.Minn. 1988), Judge O'Brien found, based on the same documentary evidence submitted in this proceeding, that Palatine not only approved of, but insisted upon Olson's burial of evidence of his interests in various entities. Citing a March 1978 letter by Glassgow, then president of Palatine, Judge O'Brien indicated that Glassgow's statement that 'Mr. Olson has made arrangements and/or sold interests that he or his various companies held in various real estate ventures' "betrays the Bank's knowledge of this intrigue, and the letter itself suggests Palatine's participation in it." *Id.* at n. 9. It is unlikely that Palatine would have known of and perhaps even encouraged these transactions and yet not have discovered the November 1, 1979, conveyance of the Carlton property until 5½ years later.

action, and no such prejudice was apparent to the court.

■ I find that Palatine's state court fraudulent conveyance action tolled the applicable six year statute of limitations. Strom was a defendant in the state court action and certainly had notice of the existence and substance of Palatine's claims against her at that time. The "delay" inherent in Palatine's commencement of this adversary proceeding nine years after the conveyance at issue was no fault of Palatine's. Rather, any delay was a direct result of Strom's chapter 11 filing, which stayed the state court action. Therefore, I find no prejudice to Strom in defending this action, nor has she claimed any.

### CONCLUSION

Palatine has failed to establish that it had a lien on the Carlton property arising from its judgment against Olson or from Olson's allegedly fraudulent conveyance of that property. Palatine also lacks standing to pursue a fraudulent conveyance action against Strom in bankruptcy court. Even if it had standing, Palatine has failed to establish the existence of any conveyance by Olson.

THEREFORE, IT IS HEREBY ORDERED: Plaintiff had no lien against the Carlton property, and hence, has no lien or any other enforceable right in the sale proceeds of that property.

LET JUDGMENT BE ENTERED ACCORDINGLY.