In re Dennis GRELL, Debtor.

**FIRST STATE BANK OF WYKOFF, Plaintiff,**

v.

**Dennis GRELL, Kathryn Grell, and Timothy D. Moratzka, as Trustee in Bankruptcy, Defendants.**

Bankruptcy No. 3–86–3041.
Adv. No. 3–87–0033.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

March 4, 1988.

David Jennings, Winona, Minn., for plaintiff.

Roger Peterson, Rochester, Minn., for defendants.

Timothy Moratzka, Hastings, Minn., Trustee.

## MEMORANDUM ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came on for scheduling conference hearing on December 7, 1987. Appearances are as noted in the record. This Order deals with jurisdictional matters raised in connection with the Plaintiff's Second Amended Complaint, and with certain nonjurisdictional matters concerning the litigation as it relates to the bankruptcy case. The issues, having been fully briefed and argued by the parties; the Court, now being fully advised in the matter, hereby makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

### THE BACKGROUND [1]

Defendant Dennis Grell was a dairy farmer until shortly before seeking protection of this Court under 11 U.S.C. Chapter 7. He financed the farming operation through First State Bank of Wykoff, the Plaintiff, (Bank). Although Defendant Kathryn Grell (Dennis' wife) guaranteed the

1. What follows is not proven fact. It is alleged by the Bank as fact and presumed for purposes of considering jurisdictional issues only.

2. Under the Dairy Termination Program, the government paid qualifying farmers for agreeing not to dairy farm for a period of years. Participating farmers were required to sell their

financial debt, she had little to do with operation. Mrs. Grell was employed full-time off the farm.

Dennis maintained a continuous financial relationship with the Bank since April of 1975. Present debt to the Bank, in connection with the operation, is $129,500.00, and is secured by all inventory, equipment, farm products, accounts, contract rights, rights to payment and general intangibles. Dennis represented to the Bank throughout the relationship that he was the sole owner of the property pledged as collateral; and, that only he, not Kathryn, was working the operation.

Financial circumstances of the farm deteriorated over time and Dennis subsequently decided to participate in the United States Government Dairy Termination Program. Discussions with the Bank ensued regarding distribution of the Program payments between the parties according to their respective interests.[2]

Later, Dennis informed the Bank that he had obtained legal counsel, and that he would not be paying any Program payments to the Bank afterall. However, he did turn over $10,511.53 to the Bank which he claimed to be the slaughter value of the livestock that was liquidated to qualify for the Program. Kathryn, not Dennis, was actually enrolled in the Program and has been receiving the government payments under the contract.

Dennis subsequently filed his Chapter 7 petition. Kathryn did not join in it, and is not a debtor.

## II.

### THE BANKRUPTCY

In the schedules accompanying the petition, Dennis claimed ownership of only one-half the residue of the farming operation.

dairy stock for slaughter value as part of the Program to assure that the cows would not be placed back into production elsewhere. The Bank claims a security interest in the right to payments as an intangible (see *In re Collins*, 68 B.R. 242 (Bankr.D.Minn.1986)), and it had a security interest in the cows.

Thus, he claimed ownership of $800.00 in 1986 corn and $3,100.00 in miscellaneous machines, implements and tools of the trade. Kathryn was identified as owner of the other one-half interest. No mention was made of any right to receive Dairy Termination payments.

On December 29, 1986, the trustee filed his "Report of Trustee in No–Asset Case". The report essentially was a recitation by the trustee that: the first meeting had been held; he had neither received any property nor paid any money on account of the estate; he had made a diligent inquiry into the whereabouts of property belonging to the estate; and that there were no assets in the estate over and above the exemptions to which the Debtor was entitled. The trustee requested in the report that it be approved and that he be discharged from office.

On January 27, 1987, Dennis filed a motion to avoid the Bank's lien on the scheduled farm machinery, tools and implements in an amount not to exceed $3,100.00 pursuant to 11 U.S.C. § 522(f). The motion was granted by default at hearing on February 17, 1987. The Debtors' attorney submitted to the Court a proposed order which contained a finding that the total value of the property was $6,200.00, but that Kathryn Grell was one-half owner. The request for such a finding was not fairly noticed in the motion, and the finding was unnecessary to the relief requested.[3] Nonetheless, the Court signed the Order and caused it to be entered on February 17, 1987.

On the same day, the Bank timely filed this adversary proceeding seeking: a bar of the Debtor's discharge under 11 U.S.C. § 727; and, alternatively, determination of nondischargeability of the Bank's debt under § 523. Notwithstanding the timely filing, an Order granting the § 727 discharge was inadvertently entered on February 23,

1987. That error was compounded by a later Order entered on July 15, 1987, "Closing No–Asset Case and Discharging the Trustee".

## III.

### THE COMPLAINT

The essence of the Bank's original complaint was that: Dennis Grell either lied to the Bank or to the Court regarding his ownership of, and Kathryn's involvement in, the farm operation; and further, that he fraudulently enrolled only Kathryn in the Dairy Termination Program to conceal his own true interest in it, with the intent of hindering, delaying and defrauding his creditors (particularly the Bank) and, later, the Court. The Bank claimed that the conduct was sufficiently reprehensible to bar discharge under § 727 or, at least, dischargeability of the Bank's debt under § 523, citing several subsections of each. An Amended Complaint was filed on February 23, 1987, but the essence remained the same.

A scheduling conference was conducted by the Court on July 6, 1987, whereupon it was determined that the Complaint would be further amended to seek declaratory judgment of entitlement to the Dairy Termination Program payments. Both the trustee and Kathryn were to be made parties for that purpose. A Second Amended Complaint was filed on September 4, 1987, and is now the relevant complaint. In addition to the § 727 and § 523 relief, the Bank seeks judgment:

IN COUNTS TWO, THREE AND FOUR: that Plaintiff's entitlement to all inventory, equipment, farm products, accounts, contract rights and other rights to payment and general intangibles involved in or arising out of the farming operation, including but not limited to, all Dairy Termination Program payments and

---

**3.** The Order otherwise correctly recited that "the Debtor, Dennis C. Grell, in Schedule B–2 of his petition, claimed as exempt, pursuant to MINN. STAT. § 550.37(6) farming machines, implements, supplies and tools used in the trade in the amount of $3,100.00." The dispositive portion of the Order allowed Dennis to exempt the farm machinery, implements, supplies and tools used in his trade up to the amounts valued by him, but in no event to exceed $5,000.00 in value, and that the Bank's lien on such property was avoided to that extent pursuant to 11 U.S.C. § 522(f).

USDA payments, be found to be superior and prior over any right, claim or interest whatsoever of Defendants Dennis Grell, Kathryn Grell and the trustee.

COUNT SEVEN: judgment against Kathryn Grell on her guarantee of the debts arising out of the farming operation.

COUNT EIGHT: deficiency judgment against both Dennis and Kathryn Grell regarding that portion of the Bank's debt not able to be satisfied through liquidation and realization of collateral.

COUNT NINE: a lien in favor of the Bank in the Dairy Termination payments for the difference between the fair-market value and slaughter value of the cattle sold by Dennis to qualify for the Program. (The Bank claims that the market value of the cattle when sold was $21,800.00 and that it was damaged in the sale at slaughter value in the amount of $11,288.47.)

The trustee has not answered the Second Amended Complaint. A second scheduling conference was held on December 7, 1987. The trustee informed the Court by telephone to the clerk that he would not be appearing, but "he had no objections to the objection". The Grells had raised jurisdictional defenses in their Answer regarding Counts Seven and Eight. The Court expressed more expansive jurisdictional concerns regarding Kathryn at the conference, and it ordered briefs to be filed addressing all jurisdictional issues. The last brief was filed on February 2, 1988.

## IV.

### THE JURISDICTIONAL ISSUES

The first issue concerns the extent to which the District Court has jurisdiction under 28 U.S.C. § 1334 to determine the interests and priorities of the parties in the property described in Counts Two, Three, Four and Nine; and the corresponding authority of the Bankruptcy Judge to hear and determine the matter under 28 U.S.C. § 157.

The second issue is whether the District Court has jurisdiction under 28 U.S.C. § 1334 to adjudicate the Bank's cause of action for judgment against Kathryn Grell on the guarantee; and, if so, what the scope of the Bankruptcy Judge's authority is to hear and determine the matter under 28 U.S.C. § 157.

The third issue is whether the District Court has jurisdiction under 28 U.S.C. § 1334 to adjudicate the Bank's cause of action for deficiency judgment against the Grells; and, if so, what the scope of the Bankruptcy Judge's authority is to hear and determine the matter under 28 U.S.C. § 157.

## V.

### THE ARGUMENTS

*The First Issue*

#### A. The Bank

Regarding the first issue, the Bank contends that the property at issue is property of the estate under any reasonable scenario. Its primary argument is that Dennis Grell conveyed none of the property to Kathryn; Kathryn never had any interest in the farming operation or the Dairy Termination Program payments; and present circumstances of the Program enrollment is a conspiratorial subterfuge to conceal assets of Dennis Grell from the Court, and to deprive the Bank of lawful entitlement pursuant to its security interest.

But even if Dennis Grell actually conveyed an interest in the operation to Kathryn; and, even if she could then be properly enrolled in the Dairy Program; the conveyances were fraudulent under 11 U.S.C. § 548 and MINN.STAT. § 513.20 *et seq.*, the Bank asserts. Thus, it claims, the property is still property of the estate, and determination of the validity, extent and priority of liens is clearly a core proceeding under 28 U.S.C. § 157(b)(2). According to the Bank, the Bankruptcy Court can hear and finally determine the matter, subject to appeal.

Finally, if all else fails, determination of the validity and priority of the interests between the Bank and Kathryn is, according to the Bank, at least a related matter in which the District Court has jurisdiction

and the Bankruptcy Judge has authority to hear and recommend under 28 U.S.C. § 157(c)(1).

Thus, the Bank easily finds jurisdiction in the District Court and authority of the Bankruptcy Judge regarding the first issue.

## B. The Grells

The Grells respond with both nonjurisdictional and jurisdictional arguments. First, they point out, the Court has already made a specific finding that Kathryn owns one-half the machinery, tools and implements in its Order entered on February 17, 1987. Furthermore, the same Order allowed Dennis Grell's avoidance of the Bank's lien on the Debtor's interest in the same property. Accordingly, they argue, the proper scope of Counts Two, Three and Four is not as expansive as the Bank claims. Furthermore, they claim, all counts, except the § 727 and § 523 discharge and dischargeability counts, go far beyond the original pleading and should not be heard, since the time to bring those causes of action has, according to them, clearly expired.

The Grells argue that Counts Two, Three, Four and Nine really present a two-party dispute, involving neither the Debtor nor the estate. The obvious purpose for asserting the causes of action here, they claim, is to obtain recovery for the Bank of both past and future Dairy Termination Program payments from Kathryn Grell. They point out that the trustee has not asserted rights of the estate to the payments and that the Debtor claims no right to them. Furthermore, neither the legal issues nor facts involve bankruptcy law, they argue. The issues regarding determination of interests and priorities simply do not arise under, nor are they related to, Title 11, they claim.

Thus, the Grells find no jurisdiction in the District Court, and consequently, no authority of the Bankruptcy Judge regarding the first issue so far as it concerns the rights of Kathryn Grell.

*The Second Issue*

The Bank argues that jurisdiction lies in the District Court over the issue of Kathryn's guarantee, and that its determination is proper on hearing by the Bankruptcy Judge with final determination to be made by a District Judge pursuant to 28 U.S.C. § 157(c)(1). Such proceedings against guarantors, it contends, have been routinely recognized by Bankruptcy Courts and others as "related" to cases for purposes of 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(c)(1). That recognition, the Bank claims, is premised on the observation that the determination and disposition of guarantee issues effects debtor/creditor relationships, the nature and extent of claims, and thereby the administration of the estate.

The Grells counter, without explanation, that Count Seven has absolutely no relationship to the pending bankruptcy. Furthermore, they argue, Kathryn does not submit to jurisdiction of the Bankruptcy Court over claims that the Bank might have against her, simply because she happens to be married to the Debtor.

*The Third Issue*

The Bank argues that deficiency judgments are properly within the jurisdiction of the District Court regarding both Grells, and that consideration is proper for the Bankruptcy Judge under 28 U.S.C. § 157(c)(1) with the final decision to be made by a District Court Judge. As with the guarantee, it contends, the question of deficiency effects claims and, therefore, administration of the estate.

The Grells do not argue that no jurisdiction lies with the District Court regarding the Bank's deficiency action against Dennis, although lack of jurisdiction was asserted on his behalf in their Answer to the Second Amended Complaint. They do argue, however, that there is no District Court jurisdiction regarding the action against Kathryn for the same reasons that they claim jurisdiction is lacking on the guarantee cause of action.

## VI.

## THE RESOLUTION OF JURISDICTIONAL ISSUES

Basic principles of federal jurisdiction, like basic principles of hearsay, were devel-

oped long ago to vex honest lawyers and to confound simple judges. Although easily understood and readily applied in the most elementary theoretical situations, they quickly become elusive and delusive in both understanding and attempted application in the real world.

Even so, if basic principles of federal jurisdiction were left undisturbed, that area of the law would be sufferable. Unfortunately, however, from time to time, they are legislatively improved upon to make them more vexing and confounding.

28 U.S.C. § 1334 and 28 U.S.C. § 157, regarding bankruptcy jurisdiction and its exercise, are recent examples of such improvements. Section 1334, interesting as it is, pales in comparison to 28 U.S.C. § 157. The latter is an attempt to constitutionally pass authority to exercise some of the federal District Court bankruptcy jurisdiction created in § 1334, from District Court Judges to non-Article III Judges.

Much has been written about these statutes both within and without the case law. Having read most of what has been written, and having carefully considered the matter, this Court believes that the less said about bankruptcy jurisdiction, the better—as long as what little is said is spoken with confidence and authority.

*The First Issue*

 Jurisdiction regarding those causes of action pleaded in Counts Two, Three, Four and Nine of this adversary proceeding is dependent upon whether the property therein identified is either estate property or property of the Debtor. If it is one or the other, jurisdiction lies in the District Court. *See: National Union Fire Ins. Co. v. Titan Energy, Inc. (In Re Titan Energy, Inc.)*, 837 F.2d 325 (8th Cir.1988). But in the present context of the litigation, the property at issue cannot be determined to be estate property on theories of fraudulent conveyance, either under 11 U.S.C. § 548 or MINN.STAT. § 513.20, *et seq.* The Bank has no standing to prosecute

fraudulent conveyance actions on behalf of the estate. *See:* 11 U.S.C. § 548 and 11 U.S.C. § 544(b). Only a trustee can avoid a prepetition fraudulent transfer of a debtor and thereby claim property as estate property. The trustee has not sought avoidance of any such alleged transfers in this case.

Accordingly, the property that is the focus of Counts Two, Three, Four and Nine can be determined to be estate property only to the extent that it is found that Dennis had the real, albeit concealed, interest in the Dairy Termination Program payments at the commencement of the bankruptcy case. Fraudulent conveyance cannot be a basis for finding, on the Bank's cause of action, that the property is estate property.

If the property identified in Counts Two, Three, Four and Nine is estate property or property of the Debtor, then determination of those causes of action are core proceedings under 28 U.S.C. § 157(b)(2)(K). *See: Titan, supra.* This is so, even though the estate's and the Debtor's interests in the property might be fully encumbered.[4] *See: In re Zachman Homes, Inc.*, 83 B.R. 633 (Bankr.D.Minn.1985). Accordingly, if the property is estate property or property of Dennis Grell, then the Bankruptcy Judge can finally determine the nature, validity, extent and priority of the Bank's liens as requested in Counts Two, Three, Four and Nine, subject to appeal.

 If the property is not estate property or property of the Debtor, jurisdiction could lie in the District Court to determine the competing interests of Kathryn and the Bank in it only if the cause of action against Kathryn is "related" to the bankruptcy case within the meaning of 28 U.S.C. § 1334(b). A proceeding is generally "related to" a bankruptcy case for purposes of bankruptcy jurisdiction if the outcome of the proceeding could conceivably have any affect on the administration of

---

**4.** It appears that the property at issue would be fully encumbered if it is estate property. The trustee is in default on the pleadings, and the Debtor concedes that there would be no equity in any of the property for the estate, if it be estate property. All parties apparently agree that the Bank would hold a first secured position, and that it is undersecured.

the estate. *See: Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.)*, 810 F.2d 782 (8th Cir. 1987).

Counts Four and Nine are not "related to" the bankruptcy case because their determination cannot conceivably have any impact on its administration. The bankruptcy is a "no asset" case. For purposes of estate administration, it makes no difference how claims would be structured as a result of determination of interests in the disputed property, because there will never be an estate distribution on the claims. Furthermore, since this is a Chapter 7 case, considerations of rights and liabilities of the parties that might otherwise be relevant in a reorganization and restructure of indebtedness, are simply of no concern to administration of this estate.

In conclusion on the first issue: if the property described in Counts Two, Three, Four and Nine is estate property or property of the Debtor, then the District Court has jurisdiction over those causes of actions under 28 U.S.C. § 1334; they are core proceedings under 28 U.S.C. § 157(b)(2)(K); and, the Bankruptcy Judge can hear and finally determine the issues subject to appeal. If the property is not property of the estate or property of the Debtor; the District Court has no jurisdiction under 28 U.S.C. § 1334 to adjudicate the competing interests between the Bank and Kathryn Grell in the property; the Bankruptcy Judge has no authority to hear the dispute under 28 U.S.C. § 157; and, the declaratory judgment action must be dismissed for lack of jurisdiction.

*The Second Issue*

■ Regarding the second issue, no jurisdiction lies in the District Court under 28 U.S.C. § 1334 over the Bank's cause of action against Kathryn on the guarantee. The Bank argues that the proceeding is "related" under § 1334(b), and it cites several cases in support of that position. The cases, however, are either Chapter 7 asset cases, or reorganization cases under Chapter 11.[5] Consequently, in those instances, determination of guarantee issues had a clear potential impact on administration of the estates. Here, as already observed, we have a Chapter 7 no-asset case that will always be a no-asset case. Any adjustment of the Bank's claim in the estate by reason of potential recovery against Kathryn is simply irrelevant to case administration or to any other aspect of the bankruptcy.[6] Accordingly, Count Seven must be dismissed for lack of jurisdiction.

*The Third Issue*

■ The same is true regarding the Bank's claim against Kathryn for a deficiency judgment. For the same reasons that pertain to the cause of action on the guarantee, Count Eight must be dismissed against Kathryn on the alleged deficiency, for lack of jurisdiction. Count Eight remains viable, however, regarding Dennis. The determination and entry of judgment fixing the amount of nondischargeable debt is recognized in this Circuit as a proper element of a nondischargeability proceeding. *See: In re Hunter*, 771 F.2d 1126 (8th Cir.1985). A nondischargeability proceeding is a core proceeding, and the Bankrupt-

---

**5.** *See: Equimark Commercial Finance Co. v. Novachich (In re Showcase Nat'l Casing Co., Inc.,)* 54 B.R. 142 (Bankr.S.D.Ohio 1985); *In re Ms. Kipps, Inc.,* 34 B.R. 91 (Bankr.S.D.N.Y.1983); *Dak Mfg. Corp. v. Coordinated Components Corp. (In re Matter of Dak Mfg. Corp.,)* 73 B.R. 917 (Bankr.D.N.J.1987); and *National Acceptance Co. of Cal. v. Levin,* 75 B.R. 457 (Bankr.D. Ariz.1987).

**6.** Payment on the guarantee would just replace the Bank's claim with Kathryn's claim. She would also be entitled to an assignment of the Bank's collateral position. Furthermore, the notice mailed to creditors regarding the bank-

ruptcy case, meeting of creditors, etc., on November 24, 1986, specifically advised creditors that it appeared from the schedules that there would be no assets from which any dividend could be paid to creditors. It further advised that proofs of claim received would not be filed or allowed, except by Order of the Court on motion for cause shown. No claims have been filed in the case and, of course, it was closed as a no-asset case by Order of July 15, 1987. That Order was erroneously entered, but only because of this pending adversary proceeding so far as it objects to the § 727 discharge of the Debtor.

cy Judge can hear and finally determine the matter, subject to appeal.

## VII.

### DETERMINATION OF CERTAIN NONJURISDICTIONAL MATTERS

Although the Defendants contend that the period in which the Bank could timely assert the causes of action pleaded in Counts Two, Three, Four and Nine had expired prior to the Second Amended Complaint, they have cited no authority for their position. Furthermore, Defendants have made no showing of any prejudice by the delay in pleading. Dismissal is not warranted on the basis of untimely filing.

■ The Orders of Discharge and Closing No–Asset Case were mistakenly entered on February 23, 1987, and July 15, 1987, since the Bank's timely filed objection to discharge was pending at that time. Accordingly, the Order should be vacated under BANKR.R. 9024 and Rule 60(a) of the Federal Rules of Civil Procedure.

The finding in this Court's Order of February 17, 1987, that Kathryn is one-half owner of the property therein referred to: was not requested in the Debtor's lien avoidance notice or motion; Kathryn's interest was not a proper subject of the motion; the finding was unnecessary to the determination of the lien avoidance rights of the Debtor in the property; the proposed order was drafted by counsel for Defendants and was received by the Court under circumstances of default by the Bank to the motion as noticed; and the Court executed the Order in the form presented, which included the inappropriate finding, by oversight. That finding will not be considered determinative of any issues raised in this proceeding.[7]

## VIII.

### DISPOSITION

Based on the foregoing, IT IS HEREBY ORDERED:

1. The Order and Notice by the Court of Discharge entered on February 23, 1987, in the bankruptcy of Dennis Grell, BKY 3–86–304, shall be vacated by separate Order with notice to creditors pursuant to BANKR.R. 9024 and Rule 60(a) of the Federal Rules of Civil Procedure. The bankruptcy case shall be, by the same separate Order and notice, reopened, and the § 362 stay shall be reimposed as to actions against the Debtor, pending determination of the § 727 objection to discharge litigation in this proceeding.

2. Count Seven, and Count Eight regarding Kathryn Grell, of the Plaintiff's Second Amended Complaint are dismissed for lack of federal jurisdiction.

3. Trial shall proceed on the remaining Counts, consistent with, and as limited by, the foregoing memorandum opinion.

---

**7.** That is not to accuse counsel for Defendants of bad faith in connection with the matter; nor is it to excuse the Court from its duty to read its own orders. In this case, however, the Order was simply overbroad in its findings and, to that extent, it should not control determination of issues now properly before the Court. To the extent that the Order voided the Bank's lien on the Debtor's interest in property, it, of course, does control.