In re MARINE IRON & SHIPBUILD-
ING COMPANY, Debtor.

MARINE IRON & SHIPBUILDING
COMPANY and Historic
Properties, Inc., Plaintiffs,

v.

CITY OF DULUTH, Defendant.

Civ. No. 5–89–166.
Bankruptcy No. 5–86–434.
Adv. No. 5–88–12.

United States District Court,
D. Minnesota,
Fifth Division.

Aug. 8, 1989.

Thomas C. Bartsh, Resnick & Bartsh, P.A., Minneapolis, Minn., for plaintiffs.

David R. Michelson, Van Evera, Clure, Butler & Michelson, P.A., Duluth, Minn., for Unsecured Creditors Committee.

Charles B. Bateman and Nikki M. Newman, Halverson, Watters, Bye, Downs & Maki, Ltd., Duluth, Minn., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR ABSTENTION

RENNER, District Judge.

This adversary proceeding in bankruptcy comes on before the undersigned United States District Judge upon a Report and Recommendation by the United States Bankruptcy Court, made on July 17, 1989. No objections were filed to that Report and Recommendation. Based upon the record before this Court,

IT IS HEREBY ORDERED:

1. That this Court adopts the Report and Recommendation;

2. That Defendant's motion for abstention under 28 U.S.C. § 1334(c) is granted, and this Court abstains from and dismisses the claims of Plaintiff Marine Iron & Shipbuilding Company against Defendant, without prejudice.

## ORDER DISMISSING COMPLAINT OF PLAINTIFF HISTORIC PROPERTIES, INC.

### AND

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR ABSTENTION, AS TO COMPLAINT OF PLAINTIFF MARINE IRON & SHIPBUILDING COMPANY

At Duluth, Minnesota, this 17th day of July, 1989.

This adversary proceeding came on before the undersigned United States Bankruptcy Judge for hearing on Defendant's alternative motions for dismissal or abstention. Defendant appeared by its attorneys, Charles B. Bateman and Nikki M. Newman. Plaintiffs appeared by their attorney, Thomas C. Bartsh. Debtor's Unsecured Creditors Committee appeared by its attorney, David R. Michelson. Upon the moving and responsive documents and the other pleadings in this adversary proceeding, this Court:

1. dismisses all of the claims of Plaintiff Historic Properties, Inc. against Defendant without prejudice, for lack of subject-matter jurisdiction; and

2. makes the following report and recommendation to the District Court for disposition of Defendant's motion for abstention pursuant to BANKR.R. 5011(b), as to all remaining claims joined by Plaintiffs' complaint.

## FINDINGS OF FACT AND PROCEDURAL BACKGROUND

Debtor, one of the two plaintiffs prosecuting this adversary proceeding, filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court on December 4, 1986. Historic Properties, Inc. ("HPI"), the other plaintiff, is a Minnesota corporation.

Historically, Debtor was engaged in the business of industrial and commercial metal fabrication in Duluth, Minnesota, for over 100 years. By the time it commenced this adversary proceeding, Debtor had discontinued all of its metal-fabrication operations. By early 1988, its sole remaining major assets were several parcels of real estate on the Duluth waterfront, including the large office/industrial structure at 325 Lake Avenue South known as the "Meierhoff Building."

This Court confirmed Debtor's plan of reorganization on August 15, 1988. The plan is a liquidating plan; under it, Debtor will fund a distribution to unsecured creditors from its share of the proceeds from this lawsuit, if it is settled on terms favorable to Debtor or if Plaintiffs prevail after trial. The plan keys the aggregate amount of the unsecured creditors' distribution to the value of the lawsuit proceeds, via a percentage formula. It provides for interim partial distribution to unsecured creditors from other sources [1] if this litigation is not promptly resolved. In any event, it provides that unsecured creditors will realize from a recovery, as long as their percentage share of the lawsuit proceeds exceeds the "floor" amount set by the interim distributions.

Plaintiffs' complaint basically sounds in breach of contract. In it, Plaintiffs allege that:

1. On March 31, 1986, Debtor and HPI entered into an option agreement under which Debtor granted an exclusive first option to HPI for the purchase of the Meierhoff Building, for subsequent renovation and development as a hotel under the name of Waterfront Plaza. Under the terms of the option agreement, the parties contemplated HPI's assignment of its interest in the option to Historic Inns of America Limited Partnership ("HIA"); Debtor expressly consented to that assignment. One Ronald Jacob was at all relevant times a principal and/or employee of both HPI and HIA.

2. After Plaintiffs executed their option agreement, HPI began negotiations

---

1. Mainly the redevelopment of a portion of the Meierhoff Building into residential condominiums.

with Defendant for entry into a development agreement.[2]

3. In a June 5, 1986 letter to Jacob,[3] David A. Sebok, Director of Defendant's Department of Planning and Development, notes "[t]he following [set of terms and conditions] forms the basis for negotiating a development agreement for the [Waterfront Plaza] development ..." He sets forth various obligations of both the developer (apparently contemplated to be HIA) and Defendant. In closing, Sebok noted "this outline will provide a basis for discussion of a final development agreement. This outline is not final but is subject to the following ..." He then set forth a number of other points for clarification, and various additional conditions precedent for Defendant's entry into a development agreement, such as the submission of a market feasibility study and evidence of adequate financing commitments.

4. In a July 10, 1986 letter to Jacob,[4] Sebok, confirmed a prior meeting among Jacob, an employee of Defendant's Department of Planning and Development, and Bill Meierhoff (Debtor's President), and set forth "the results of our further analysis" in the form of various additional conditions for the developers' use of tax-increment bond funding, the obligation of Defendant to apply for an Urban Development Action Grant ("UDAG") from the U.S. Department of Housing and Urban Development, and various other conditions. The letter closes with Sebok's statement that "I trust that this letter in conjunction with and as it modifies previous communications on this project, provides a basis upon which you can proceed with your financing arrangements."

In their complaint, Plaintiffs allege that these two letters constitute an "agreement" between Defendant and HPI—apparently equating to "a contract enforceable at law or equity" by any direct or third-party beneficiary of it. They further allege that, in performance of this "agreement," HPI committed time and funds to the first stages of the proposed development; and that in reliance on the asserted agreement between HPI and Defendant, Debtor "chose not to cancel the option with [HPI], chose not to seek other buyers for its properties or further develop the building, and ... did not renew leases with its tenants or seek new tenants." Lastly, Plaintiffs allege that, in November, 1986, Defendant's responsible officials abruptly decided "not to proceed with the project," though apparently they did not formally notify Plaintiffs of that until March 11, 1987.

In separate, generally-phrased prayers for relief, Plaintiffs request awards of damages for Defendant's breach of the alleged agreement between HPI and Defendant. Under one, Debtor prays for an award of damages in excess of $1,700,000.00. In another, HPI prays for an award in an unspecified amount, to compensate it for its past advances of expenses, the loss of development and management fees, and the loss of its expectation of an equity interest in the development. The two plaintiffs also assert a third, joint "cause of action" in damages for breach of "implied warranties and covenants of good faith and fair dealing." Plaintiffs assert that this adversary proceeding is a "core proceeding" under 28 U.S.C. § 157(b)(2)(O) or, in the alternative, that this Court has "related-proceeding" jurisdiction under 28 U.S.C. § 157(c)(1).

In its answer, Defendant generally and specifically denies the existence of any enforceable contract running between it and either named plaintiff, alleging that the procedural formalities required under Minnesota law to bind Defendant to any contractual relationship were not performed; asserts that the attachments to Plaintiffs' complaint purportedly forming the agreement were addressed to HIA and

---

2. Apparently HPI and/or HIA planned to utilize substantial amounts of public financing to carry out the development, to be provided by or obtained through the issuance of tax increment bonds, or some other participation by Defendant.

3. The letter is attached as an exhibit to Plaintiffs' complaint.

4. Again, this letter was attached as an exhibit to the complaint.

not to either named plaintiff; and asserts that Plaintiffs failed to allege the existence of any agreement between Debtor and Defendant which would support a cause of action by Debtor against Defendant. Defendant specifically denies that this adversary proceeding is either a core proceeding or a related proceeding; asserts lack of subject matter jurisdiction as an affirmative defense; declines to consent to the authority of a bankruptcy judge to enter final judgment; and prays for abstention in favor of adjudication in the Minnesota state courts. Defendant also demands a jury trial.

In the motions at bar, Defendant requests dismissal of this adversary proceeding on the ground that it does not constitute either a "core proceeding" within the meaning of 28 U.S.C. §§ 157(b), or a "related proceeding" within the meaning of 28 U.S.C. § 157(c), and that the federal courts therefore lack *any* jurisdiction to entertain it. In the alternative, Defendant requests that if the Court determines this adversary proceeding to be a "related proceeding," that it exercise "permissive abstention" under 28 U.S.C. § 1334(c)(1) to dismiss it.

## DISCUSSION

### I. Statutory Framework for Jurisdiction.

28 U.S.C. § 1334 grants general jurisdiction over bankruptcy cases and proceedings to the federal district courts. It provides that "the district courts shall have original and exclusive jurisdiction of all cases under [the Bankruptcy Code]," 28 U.S.C. § 1334(a), and that they "shall have original but not exclusive jurisdiction of all civil proceeding arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]," 28 U.S.C. § 1334(b).

Under this jurisdictional structure, the bankruptcy "case" over which the District Court has exclusive jurisdiction is only a framework for the present and future invocation of the federal courts' jurisdiction over the debtor and its financial affairs. The bankruptcy case is commenced by the filing of a bankruptcy petition, but the "case" is not an adversarial proceeding in and of itself. Under the jurisdiction conferred by the pendency of the bankruptcy case, however, parties in interest may commence proceedings to obtain judicial determinations of contested matters. These judicial proceedings have the attributes of various stages of civil litigation in non-bankruptcy forums. *In re Arctic Enterprises, Inc.*, 68 B.R. 71, 76 at n. 4 (D.Minn. 1986); *In re Northwest Cinema Corp.*, 49 B.R. 479, 480 at n. 4 (Bankr.D.Minn.1985).

For the purposes of the federal courts' bankruptcy jurisdiction, judicial proceedings in a bankruptcy case are divided into two classes: "core proceedings," as illustrated in 28 U.S.C. § 157(b)(2), and "proceedings related to a case under [the Bankruptcy Code]." [5]

■ 28 U.S.C. § 157(b)(2)(A)–(O) contain a non-exclusive "laundry list" of various sorts of core proceedings. Title 28 does not define the phrase "core proceeding." In general, a core proceeding is a legal dispute between parties in interest to a bankruptcy case, one of whom is almost always the debtor. As fixed by the very nature of the parties' relationships to the debtor and the relief requested, core proceedings are those intrinsic to the adjustment of debtor-creditor relationships involved in bankruptcy relief. *Gaslight Club, Inc. v. Official Creditors Committee*, 46 B.R. 209, 211 (N.D.Ill.1985).

Similarly, Title 28 does not define the term "civil proceeding ... related to [a] case under title 11"; nor does it give any examples of a related proceeding.[6] The Eighth Circuit has held that

the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankrupt-

---

5. This distinction is also significant to the question of which judicial officer of the District Court—i.e. a District Judge or a Bankruptcy Judge—has the authority to enter a final judgment or order in a given proceeding.

6. In the shorthand of bankruptcy parlance, a "civil proceeding ... related to a [bankruptcy] case" is a "related proceeding."

cy.... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate.

*National City Bank v. Coopers & Lybrand,* 802 F.2d 990, 994 (8th Cir.1986) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). *See also In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987); *In re Titan Energy, Inc.,* 837 F.2d 325, 329–30 (8th Cir.1988).

## II. Summary of Defendant's Arguments.

Defendant moves for an order dismissing this adversary proceeding on alternative grounds. First, it argues that this lawsuit is neither a core proceeding nor a related proceeding, and notes that there is no independent basis for federal-court jurisdiction over it under the federal-question provisions of 28 U.S.C. § 1331 or the diversity-of-citizenship provisions of 28 U.S.C. § 1332. If this is the case, it would follow that the federal courts lack subject-matter jurisdiction to entertain this adversary proceeding, whether that jurisdiction be asserted as bankruptcy jurisdiction under 28 U.S.C. § 1334(b)–(c) or otherwise.

In the alternative, Defendant moves for an order abstaining from this lawsuit under the "discretionary abstention" provision of 28 U.S.C. § 1334(c)(1):

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Dismissal, without prejudice, would be the necessary result of an exercise of discretionary abstention. These motions do not reach the merits of Plaintiffs' complaint, and only address the identity of the court which will render judgment on that complaint.

As a threshold point in analysis, it is important to note that the two plaintiffs to this adversary proceeding actually have distinct claims[7] against Defendant which necessarily proceed under different theories, even though they spring from the same event—Defendant's breach of an alleged contract. HPI sues in its own right for redress of the damage which it alleges it suffered as a result of the alleged breach of contract. It sues as a named party to the alleged contract.

Beyond that, Debtor sues in its own right to recover damages for the injury which it alleges it suffered, but it does so from a different status as party-plaintiff. While it is not crystal clear from the complaint, Debtor seems to argue that it was a third-party beneficiary to the development agreement. The complaint could also be construed as an assertion that, at the very least, Debtor would have obtained substantial benefits from the option agreement; that Defendant's performance under the development agreement was a necessary prerequisite to HPI's performance under the option agreement; and that Sebok was aware of the option agreement and contemplated it as a necessary commitment collateral to and prerequisite to the development agreement.

These two causes of action involve some common legal and factual issues, and some which are greatly disparate. For the purposes of jurisdiction and abstention, the two claims must be considered separately, and really as potentially-independent lawsuits.

## III. Classification of This Adversary Proceeding.

The threshold question, then, is whether this adversary proceeding is properly classified as a "core proceeding" under 28 U.S.C. § 157(b)(2); a "civil proceeding re-

---

7. At the risk of some confusion, this Court will use the term "claim," even though that term has a specific and different meaning in the context of a bankruptcy case. *See, e.g.,* 11 U.S.C. §§ 101(4) and 502. The term seems preferable to "cause of action," which may not be entirely precise in this situation. *See, e.g., United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 67–68, 53 S.Ct. 278, 280–81, 77 L.Ed. 619 (1933).

lated to [a] case ... under title 11" as contemplated by 28 U.S.C. § 1334(b); or neither. This Court has the authority and obligation to make this determination. 28 U.S.C. § 157(b)(3). "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." *Id.*

### A. Core proceeding?

■ Neither of the claims in this adversary proceeding are properly classified as core proceedings. HPI's claim against Defendant is an action for breach of contract between two parties, neither of whom was the petitioner for bankruptcy relief in Debtor's case, and neither of whom was a scheduled creditor or claimant against Debtor's bankruptcy estate. Debtor's claim against Defendant is a cause of action against a third party who similarly was a stranger to the process of adjustment of debtor-creditor relationships which took place in Debtor's Chapter 11 case. Neither claim falls within any of the more specific examples of a core proceeding set forth in 28 U.S.C. §§ 157(b)(2)(B)–(N).

This leaves the "catch-all" provisions of 28 U.S.C. §§ 157(b)(2)(A) ("matters concerning the administration of the estate") and 157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship ..."). In support of their argument that this adversary proceeding is a core proceeding within one or the other of these provisions, Plaintiffs argue that this is a proceeding to liquidate a cause of action for the benefit of a bankruptcy estate, and that "a speedy resolution of the matter would impact upon the Debtor's ability to reorganize." Aside from the fact that the confirmation of its Chapter 11 plan terminated the existence of Debtor's bankruptcy estate [8] and fully and finally reorganized Debtor by readjusting its debt structure,[9] the argument still ignores the limitation on the jurisdiction and authority of the Bankruptcy Court imposed by the Supreme

Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and Congress's response to it in the Bankruptcy Amendments and Federal Judgeship Act of 1984. As the Eighth Circuit has noted, the Courts must avoid an expansive application of the catch-all provisions of 28 U.S.C. §§ 157(b)(2)(A) and (O) to avoid violating the mandate of *Marathon Pipe Line. In re Cassidy Land and Cattle Co., Inc.,* 836 F.2d 1130, 1132 (8th Cir. 1988). To the extent that the plurality opinion in *Marathon* unequivocally settled *any* point of jurisdiction under the scheme of the Bankruptcy Code of 1978, it held that, absent consent of the parties, a state-law breach-of-contract action by a bankruptcy trustee or Chapter 11 debtor against a non-creditor third party could not be heard and finally determined by a federal judicial officer who was not protected by life tenure conferred under Article III of the Constitution. 458 U.S. at 87 n. 40, 102 S.Ct. at 2880 n. 40.

In all jurisdictional respects, Debtor's breach-of-contract action against Defendant is indistinguishable from the action which spawned *Marathon.* Congress enacted 28 U.S.C. §§ 157(b) and (c) and 1334(a) and (b) to respond to the Supreme Court's ruling in *Marathon,* and "[t]he distinction between core and non-core proceedings is at the heart of Congress's response ..." *In re Cassidy Land and Cattle Co., Inc.,* 836 F.2d at 1132. It necessarily follows that Congress did not intend an action such as Debtor's claim against Defendant to fall within the catch-all provisions of 28 U.S.C. § 157(b)(2)(A) and (O). *See also In re Castlerock Properties,* 781 F.2d 159 (9th Cir.1986).

It is more obvious, virtually beyond argument, that HPI's claim against Defendant cannot be a core proceeding in Debtor's bankruptcy case. HPI is not a petitioner in bankruptcy before this Court and hence cannot invoke the federal courts' bankruptcy jurisdiction by asserting the protected status of a liquidating or reorganizing

---

8. *See* 11 U.S.C. § 1141(b).

9. *See* 11 U.S.C. § 1141(d)(1).

debtor. HPI's claim against Defendant has nothing to do with the adjustment of debtor-creditor relations which took place in Debtor's reorganization, and Debtor's creditors will not be impacted in the least by *HPI's* recovery of damages if HPI prevails. HPI almost certainly could have sued its breach-of-contract claim in the Minnesota state courts without Debtor's participation as co-plaintiff, whether Debtor had been in bankruptcy or not. If Debtor cannot vest its claims in this lawsuit with the status of a core proceeding by asserting its own status in this Court, HPI—as a stranger to the bankruptcy process—certainly can not do so for its claims.

### B. Related proceeding?

■ This does not dispose of the question of whether this is a related proceeding, however. As Defendant acknowledges, for there to be subject matter jurisdiction over a related proceeding under 28 U.S.C. § 1334(b), there must be some cognizable nexus between the civil proceeding and the Title 11 case. *In re Dickenson Lines, Inc.,* 47 B.R. 653, 656 (Bankr.D.Minn.1985).

■ That nexus is present, for Debtor's claim against Defendant. To be sure, there is no longer a bankruptcy estate in administration under the protection of this Court; thus, were the *Pacor, Inc. v. Higgins* test limited to the pinpoint of its technical wording, the ostensible fundament for related-proceeding jurisdiction—the bankruptcy estate which would be impacted by the proceeding—has now vanished and the federal courts' jurisdiction over such proceedings has lapsed forever.

However, pursuant to the terms of its confirmed liquidating plan, Debtor is administering assets to fund a mandatory distribution to its unsecured creditors. In proposing the plan, Debtor specifically of-

fered the fruits of its claim against Defendant to its unsecured creditors, undoubtedly as an inducement to accept the plan. The unsecured creditors accepted the offer. If Debtor prevails on its claim, the proceeds will provide unsecured creditors with the major portion of their realization from Debtor's bankruptcy. The outcome of Debtor's claim thus will have an undeniable effect on the value of the *corpus* of assets ultimately available for the benefit of creditors. *Compare In re Grell,* 83 B.R. 652, 657 (Bankr.D.Minn.1988) (where property which is the subject of a proceeding is either property of the bankruptcy estate or property of the debtor, jurisdiction will lie under 28 U.S.C. § 1334(b)). Because it has a central position in the restructuring of the rights of Debtor and its unsecured creditors under a confirmed plan of reorganization, Debtor's claim against Defendant is fairly classified as a civil proceeding related to Debtor's bankruptcy case. *See In re Titan Energy, Inc.,* 837 F.2d at 330 ("... even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test articulated in *Pacor*.").[10]

The same result does not obtain for HPI's claim against Defendant. This is so regardless of the relative breadth of related-proceeding jurisdiction under *Titan Energy;* and regardless of the fact that the intercession of 28 U.S.C. § 157(c)(2) and BANKR.R. 5011(b) prevents an Article III bar to the District Court's ultimate disposition of related proceedings.

■ Even the broad scope of related-proceeding jurisdiction is subject to a limit. Classifying HPI's cause of action against Defendant would go far beyond that boundary. HPI could bring a breach-of-contract action against Defendant in any

---

10. Counsel for Debtor's Unsecured Creditors Committee argues that this is no more than a simple proceeding to garner assets for distribution to creditors. Were this the case, Debtor's claim might be indistinguishable from the mortgage-foreclosure actions found to be core proceedings in *In re Dogpatch U.S.A., Inc.* and *In re Cassidy Land & Cattle Co.* However, in both of those cases the Eighth Circuit concluded that the judicial foreclosure actions, as the sole or near-sole assets of the respective estates, were actually proceedings for turnover of fixed and matured debts within the scope of 28 U.S. § 157(b)(2)(E). Here, Defendant strenuously contests liability on a claim for breach of contract, and in any event the amount of the "debt" is wholly unliquidated. As noted *infra* at p. 982, this lawsuit is indistinguishable from that which spawned *Marathon*—the archetypal "related proceeding."

court of appropriate jurisdiction, whether it joined Debtor as a co-plaintiff or not. The award of damages which it seeks is attributable to pecuniary losses which are unique to HPI, and to its role in the proposed development. HPI's losses are wholly distinct, legally and financially, from the injury which Debtor alleges it suffered. While Debtor would have to prove the existence and breach of the development agreement before it could proceed on its derivative claim, nothing would prohibit HPI from suing and recovering on its contractual claim without Debtor's participation—and, in that event, any recovery by HPI would have no impact whatsoever on the eventual consummation of Debtor's confirmed plan. The only conceivable effect which the outcome of HPI's lawsuit could have upon Debtor's creditors would be if it lost. Admittedly, in that event Debtor's dependent claim would be doomed. However, that connection is simply too tenuous to constitute the nexus which must exist for the exercise of related-proceeding jurisdiction, when the two plaintiffs' causes of action are considered as separate lawsuits. Thus, HPI's claim against Defendant is not a civil proceeding related to a bankruptcy case, as contemplated under 11 U.S.C. § 1334(b).

## IV. EXERCISE OF THE FEDERAL COURTS' JURISDICTION OVER THIS LAWSUIT.

### A. Over Debtor's Claim Against Defendant.

Because Debtor's claim against Defendant is a "civil proceeding ... related to" Debtor's Chapter 11 case, the District Court has original subject-matter jurisdiction over it under 28 U.S.C. § 1334(b). Thus, even though Defendant resists hearing and entry of final judgment by a Bankruptcy Judge,[11] the District Court has jurisdiction over this claim. *See In re Northwest Cincma Corp.*, 49 B.R. at 480. Thus, this Court will not dismiss those portions of the complaint joining Debtor's claims for want of subject-matter jurisdiction.

### B. Over HPI's Claim Against Defendant.

The federal courts have no basis for jurisdiction over HPI's claim against Defendant outside of any which may stem from Debtor's status as a petitioner under Chapter 11. HPI's claim against Defendant is neither a core proceeding nor a related proceeding in Debtor's bankruptcy case, so the federal courts do not have bankruptcy jurisdiction over it either. The only conceivable ground for an assertion of federal-court jurisdiction over this claim is under the doctrine of pendent jurisdiction. Though neither of the parties argued the applicability of pendent jurisdiction over HPI's separate claim (probably because they did not acknowledge the legally distinct nature of the plaintiffs' claims), the Court is compelled to address it.

 Under the doctrine of pendent jurisdiction, a federal court may exercise jurisdiction over a claim arising under state law, as to which there otherwise would be no federal jurisdiction, where that claim is joined in a lawsuit involving a federal-law claim over which the federal courts do have jurisdiction. The main claim and the pendent claim "must derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). As the Supreme Court noted, the power to exercise pendent jurisdiction

> ... need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them ...

---

11. Defendant seeks to have it both ways in one respect, however—as it apparently consents to a bankruptcy judge's entry of an order for dismissal in its favor. As will be seen, the Bankruptcy and District Courts will not have to face the question of which of them would address this proceeding, and through which dispositional process, as the federal courts should abstain from entertaining any of Debtor's claims.

*United Mine Workers of America v. Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139 (citation omitted). The Eighth Circuit has been inclined to apply the doctrine of pendent jurisdiction somewhat broadly. *See Kroger v. Owen Equipment & Erection Co.*, 558 F.2d 417 (8th Cir.1977), *rev'd, Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Hess v. St. Joseph Police Pension Fund*, 788 F.2d 1344 (8th Cir.1986). The District Court for this District has not been quite so inclined. *See Medical Inc. v. Angicor Ltd.*, 677 F.Supp. 1000 (D.Minn. 1988).

*Gibbs* involved a plaintiff's attempt to pend state-law *claims* to federal-law *claims* where it asserted both sets of claims *against the same defendants* in a federal-court lawsuit. Seizing upon the Supreme Court's broadening of the scope of pendent jurisdiction in *Gibbs*, litigants since have attempted to further extend its reach to join *additional parties* subject to non-federal claims, to actions over which the federal courts could properly exercise jurisdiction, even though the federal courts would not otherwise have jurisdiction over those parties or the claims against them.

The Supreme Court has not been as ready to sanction broad-ranging use of this so-called "pendent-party" jurisdiction:

> From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative fact."

*Aldinger v. Howard*, 427 U.S. 1, 14, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1975). Acknowledging that an exercise of jurisdiction over all claims against all parties to a single cause of action would serve judicial economy, the Supreme Court nonetheless cautioned that "... the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress." *Aldinger v. Howard*, 427 U.S. at 15, 96 S.Ct. at 2420. To delimit the scope of pendent-party jurisdiction, the Supreme Court abjured:

> In short, as against a plaintiff's claim of *additional* power over a "pendent party," the reach of the statute conferring jurisdiction should be construed in light of the scope of the cause of action as to which federal judicial power *has* been extended by Congress.
>
> Resolution of a claim of pendent-party jurisdiction, therefore, calls for careful attention to the relevant statutory language.

> . . . . .

> Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.

*Aldinger v. Howard*, 427 U.S. at 17–18, 96 S.Ct. at 2421–22 (emphasis in original).

Thus, the context in which the non-federal claim against the pendent party is asserted is crucial. *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. at 375–76, 98 S.Ct. at 2403–04. The Court plainly must consider the relationship between the claim against the pendent party and the claim upon which federal-court jurisdiction is properly invoked. Thus, where the claim against the pendent party is a third-party complaint, depending at least in part upon the resolution of the primary federal-court claim, the relationship "is thus not mere factual similarity but logical dependence," *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. at 376, 98 S.Ct. at 2404,

and will generally support an assertion of pendent-party jurisdiction. Where, however, the claim against the pendent party is not "an ancillary and dependent claim," but "a new and independent one," it will not support an assertion of pendent-party jurisdiction. *Id.* (pendent-party jurisdiction inappropriately asserted in wrongful-death action against defendant as to whom there was no independent basis of federal jurisdiction, after dismissal of complaint against co-defendant over whom there had been federal jurisdiction, where alleged causative roles of each co-defendant, and factual and legal theories of relief against each co-defendant, were distinct); *Finley v. United States,* —— U.S. ——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).

■ Thus, satisfaction of the *Gibbs* threshold requirement that the claims arise from a "common nucleus of operative fact" is not sufficient in and of itself to invoke pendent-party jurisdiction; such a relationship is only one of "mere factual similarity," which will not support pendent jurisdiction in the absence of some explicit or implicit authorization under a jurisdictional statute. *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. at 376–7, 98 S.Ct. at 2404–05; *Finley v. United States,* —— U.S. at ——, 109 S.Ct. at 2008. *See also Zahn v. Internat'l Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

■ Here, neither the cross-relationship of the two plaintiffs' claims nor the statutory source of federal jurisdiction over Debtor's claim supports an assertion of pendent-party jurisdiction. For federal jurisdictional purposes, the pendent claim is HPI's, which otherwise has no place in federal court. However, for substantive purposes HPI's claim is in fact the main claim. Debtor's claim (that Defendant's breach of the development agreement deprived Debtor of the benefit of its grant of a sale option to HPI) derives entirely from HPI's original breach-of-contract claim, which was premised upon that asserted development agreement. Defendant asserts on the merits that there was no enforceable contract between HPI and Defendant; or, assuming there was, Defendant either did not breach it or its breach was subject to a contractual defense. If either of these is the case, Debtor's subsidiary claim is wholly defeated.

For the purposes of pendent jurisdiction, this is definitely a case of "the tail wagging the dog." The threshold and primary dispute is the one which Plaintiffs seek to "shoehorn" into federal court by initially asserting federal jurisdiction over the derivative, subsidiary claim. Neither the main doctrine of pendent jurisdiction nor its pendent-party extension are designed to operate this way; rather, they are intended to afford a means of comprehensively resolving less central, though nonetheless meritorious, state-law claims in one federal forum, after the proper invocation of federal jurisdiction over more central claims.

To the same effect, the statute conferring related-proceeding jurisdiction over Debtor's claim against Defendant does not, either explicitly or impliedly, suggest that the federal courts were to have pendent jurisdiction in the bankruptcy forum over claims such as HPI's claim against Defendant. Clearly, Congress intended the structuring of bankruptcy jurisdiction in the district courts under the Bankruptcy Amendments and Federal Judgeship Act of 1984 as a response to the Supreme Court's mandate in *Marathon,* as well as the general precept that the federal courts are courts of limited jurisdiction. The "careful attention to the relevant statutory language" of 28 U.S.C. § 1334 mandated by *Aldinger v. Howard* requires a conclusion that Congress never intended the federal courts to entertain breach-of-contract claims between two non-debtor and non-creditor parties, with as little connection to the central issues of the bankruptcy case as is present here. The Supreme Court has cautioned that the federal courts may "not assume that the full constitutional power has been congressionally authorized [in the case of pendent-party jurisdiction], and will not read jurisdictional statutes broadly." *Finley v. United States,* —— U.S. ——, 109 S.Ct. at 2007. The broad construction for the statutory grant of related-proceeding

jurisdiction [12] is thus inapplicable where pendent-party jurisdiction is asserted. A narrow construction of 28 U.S.C. § 1334, particularly against the backdrop of the post-*Marathon* evolution of the federal courts' bankruptcy jurisdiction, compels the conclusion that Congress impliedly declined to extend jurisdiction over parties and claims like those joined by HPI, in the context of a proceeding related to a bankruptcy case. *See Aldinger v. Howard*, 427 U.S. at 18–19, 96 S.Ct. at 2422–23.

### C. Result, as to Jurisdiction.

Given the conclusions laboriously reached above,[13] this Court declines to dismiss Debtor's claim against Defendant for lack of subject-matter jurisdiction under 28 U.S.C. § 1334(b). However, as the federal courts lack subject-matter jurisdiction over HPI's claim against Defendant, this Court must grant Defendant's motion to dismiss that claim. As Defendant has implicitly consented to the authority of a bankruptcy judge to finally dispose of this adversary proceeding via dismissal for lack of jurisdiction, this Court may and will enter a dispositive order as to the claims over which the federal courts have no jurisdiction.

### V. ABSTENTION FROM HEARING AND DETERMINING DEBTOR'S CLAIM AGAINST DEFENDANT.

The remaining issue is whether the federal courts should abstain from hearing and disposing of Debtor's claim against Defendant. Defendant requests that the federal courts exercise their discretion to abstain pursuant to 28 U.S.C. § 1334(c), in favor of allowing the litigation of this action under state common law to proceed in the Minnesota state courts. In support of its motion, Defendant primarily argues that both Plaintiffs' claims—and particularly Debtor's claim—against it raise novel questions of state law, as to which there is little or no governing precedent from the Minnesota appellate courts, and as to which the law is unsettled elsewhere.[14] Plaintiffs summarily deny this argument, without citing any Minnesota caselaw authority which even remotely touches on their theories of relief.

Out of deference for concerns of federalism, the federal courts may properly abstain from hearing and determining state-law claims where the status of the governing law is unsettled. *See, e.g., In re Artic Enterprises, Inc.*, 68 B.R. 71, 77–78 (D.Minn.1986) ("Abstention is called for where it is more appropriate to have a state court hear a particular matter of state law ..."); *In re Drenckhahn*, 77 B.R. 697, 712 (Bankr.D.Minn.1987). On the other hand, in the absence of binding, on-point precedent from a state Supreme Court, a federal court may utilize existing authority on related questions from the same state to arrive at the precise rule which that state Supreme Court would be likely to apply. *Smith v. Mark Twain Nat'l Bank*, 805 F.2d 278 (8th Cir.1986); *Carlson v. Tandy Computer Leasing*, 803 F.2d 391 (8th Cir. 1986).

The advisability of abstention on the sole ground of "respect for state law" is a close question here. As noted, there are fairly explicit caselaw requirements for forma-

---

**12.** *See, e.g., In re Titan Energy, Inc.*, 837 F.2d at 330.

**13.** The length of the analysis produced by present exercise further underlines Judge O'Brien's tart, epigrammatic observation:

Basic principles of federal jurisdiction, like basic principles of hearsay, were developed long ago to vex honest lawyers and to confound simple judges. Although easily understood and readily applied in the most elementary theoretical situations, they quickly become elusive and delusive in both understanding and attempted application in the real world.

*In re Grell*, 83 B.R. at 656–57.

**14.** Defendant's position on the novelty of the legal issues is to some extent inconsistent, as in the same breath its counsel insists that Minnesota caselaw relating to the formation of contracts with municipal corporations mandates a conclusion that HPI and Defendant had no contract enforceable at law and, therefore, Defendant has no derivative right of action for breach of contract. *Alexander Co. v. City of Owatonna*, 222 Minn. 312, 24 N.W.2d 244 (1946); *Morris v. Perpich*, 421 N.W.2d 333 (Minn.App.1988), *review denied* (Minn. May 16, 1988).

tion of contracts with entities such as Defendant; and, there is also some authority [15] on the question of whether Debtor, as a nonparty to the development agreement, could nonetheless sue asserting a breach of it. Finally, the law governing "covenants of good faith and fair dealing" is in flux all over the United States, and is properly being developed in much major commercial and lender-liability litigation both the state and the federal courts. Thus, the alleged novelty and unsettled status of the questions of law presented in Debtor's claim against Defendant do not strongly support an exercise of discretionary abstention.

However, the general interest of justice, the interests of judicial economy, and the courts' general interest in insuring finality and uniformity of judgments all merit an exercise of discretionary abstention. This Court has dismissed HPI's main claim, to which Debtor's claim is entirely derivative. The two claims involve numerous common factual issues, and sequential legal issues. Thus, they should be heard and decided by the same court in the same lawsuit. Given that only state-law contract issues are involved, the state courts should be the ones with a presumptive expertise in that law. At the very least, a renewed joinder of the claims under a single state-court complaint would avoid the prospect of complex collateral estoppel issues, and the possibility of inconsistent adjudications, which would otherwise result were the claims separately litigated in state and federal courts. To be sure, the central importance of Debtor's claim to the interests of its creditors is one factor auguring against abstention in and favor of retaining federal jurisdiction. However, the factual intertwining and derivative relationship of the two claims suggest that abstaining from Debtor's claim is the only appropriate result, given the inability of the federal courts to entertain HPI's claim.

Lastly, judicial economy supports abstention. Defendant has demanded a jury trial. As Plaintiffs' claims are "Suits at common law," under the meaning of the Seventh Amendment, Defendants are entitled to trial by jury. *Granfinanciera, S.A. v. Nordberg,* —— U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). The same conclusion obtains under the comparable provision of MINN. CONST. art. 1, § 3. *Landgraf v. Ellsworth,* 267 Minn. 323, 126 N.W.2d 766 (1964). *See also Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962). As a result, Debtor's claims would be transferred to the District Court, for trial there. LOC.R.BANKR.P. (D.Minn.) 103(d) and (e). There is no reason why two courts should have to preside over separate jury trials, where the claims to be tried thereby have the relationship which is present here. A single litigation in a single court with the participation of all involved parties will conserve the courts' and the parties' resources, which is yet another appropriate reason why the federal courts should abstain.

## CONCLUSION

On the basis of the foregoing,

IT IS HEREBY ORDERED that all of those claims set forth in the section entitled "Second Cause of Action" in Plaintiffs' complaint, and those claims joined by Plaintiff Historic Properties, Inc. in the section entitled "Third Cause of Action" in Plaintiffs' complaint, are dismissed for lack of subject-matter jurisdiction in the federal courts, without prejudice to their renewal in another court of appropriate jurisdiction.

FURTHER, IT IS RECOMMENDED TO THE U.S. DISTRICT COURT that Defendant's motion for abstention be granted, as to all other claims joined in Plaintiffs' complaint.

BY THE COURT:
s/ Gregory F. Kishel
GREGORY F. KISHEL
U.S. Bankruptcy Judge

---

**15.** *Cretex Cos., Inc. v. Construction Leaders, Inc.,* 342 N.W.2d 135 (Minn.1984), cited in Defendant's brief.