**In re POLAROID CORPORATION, et al., Debtors.**

(Includes: Polaroid Holding Company; Polaroid Consumer Electronics, LLC; Polaroid Capital, LLC; Polaroid Latin America I Corporation; Polaroid Asia Pacific LLC; Polaroid International Holding LLC; Polaroid New Bedford Real Estate, LLC; Polaroid Norwood Real Estate, LLC; Polaroid Waltham Real Estate, LLC).

**John R. Stoebner, Trustee, Plaintiff,**

**v.**

**PNY Technologies, Inc., Defendant.**

Bankruptcy Nos. 08–46617, 08–46621 (GFK), 08–46620 (GFK), 08–46623 (GFK), 08–46624 (GFK), 08–46625 (GFK), 08–46626 (GFK), 08–46627 (GFK), 08–46628 (GFK), 08–46629 (GFK).

**Adversary No. 10–4595.**

United States Bankruptcy Court, D. Minnesota.

July 7, 2011.

Julia A. Christians, Tyler D. Candee, Lapp Libra Thomson Stoebner & Pusch, Minneapolis, MN, for Plaintiff.

494

David J. Adler, Joseph T. Boccassini, Michele M. Vanderstreet, McCarter & English LLP, Newark, NJ, Robert T. Kugler, Leonard Street & Deinard P.A., Minneapolis, MN, for Defendant.

## ORDER RE: CONSENT UNDER 28 U.S.C. § 157(c)(2) AND FED. R. BANKR. P. 7008(a) AND 7012(b)

GREGORY F. KISHEL, Chief Judge.

This adversary proceeding was commenced by the trustee who serves in the bankruptcy cases of Debtors Polaroid Corporation, Polaroid Consumer Electronics, LLC ("PCE"), and the others named in the case caption above.[1] It is part of a docket of avoidance litigation commenced after the underlying cases were converted from Chapter 11 to Chapter 7.

Via a three-count amended complaint, the Trustee seeks money judgments against Defendant PNY Technologies, Inc. ("PNY") in a total of nearly $550,000.00 plus interest. He also seeks the disallowance of PNY's claim(s) in the underlying cases pursuant to 11 U.S.C. § 502(d), i.e., until PNY has satisfied any adjudged liability to the estates.

Count One of the complaint sounds under 11 U.S.C. § 547(b); the Trustee seeks the avoidance of pre-petition transfers from Debtor PCE to PNY that he characterizes as preferential, and a money judgment of $215,179.30 plus interest against PNY to effectuate the avoidance. In Count Two, the Trustee alleges that PNY breached a contract with Debtor Polaroid Corporation, by failing to pay amounts due under a "Brand License Agreement." He seeks a money judgment against PNY on this count, in the amount of $332,287.59

plus interest. The specifics of Count Three are not directly relevant to the issue at bar, or to the motion as a whole. It is worth noting that PNY filed two proofs of claim in the underlying cases: an original one on February 20, 2009, assigned number 34 by the clerk, and another on October 5, 2009 (post-conversion), assigned number 188. Both proofs of claim recite an amount of $686,837.57; and both designate the estate of the Polaroid Corporation as the one against which the claims are asserted.

PNY's first response to the service of the Trustee's complaint was a motion for dismissal, later withdrawn by stipulation. PNY then filed an answer. After that, counsel coordinated cross-motions for partial summary judgment on Count Two.

Before those motions came on for hearing on June 22, 2011, there was a flurry of late-filed submissions that somewhat changed the parties' theories as to both procedure and law. Further complications emerged at the hearing, with PNY's counsel insisting on a continuance for the taking of discovery on limited fact issues before the motions were fully submitted.[2]

That last track had not been previously requested in a sufficiently-articulated fashion, and the other new perspectives on the substance of the motions had emerged late. So, the motions were taken under advisement to address the procedural posture of the litigation and the merits as appropriate. In passing, the Court drew counsel's attention to the Supreme Court's pending consideration of the appeal from *In re Marshall,* 600 F.3d 1037 (9th Cir. 2010). That case was one of the last left

---

1. The Plaintiff will be termed "the Trustee" in the rest of this decision. The debtor in the lead case, the Polaroid Corporation, will be signified by its full name. This nomenclature best evokes the relative postures of those parties.

2. This proposal was somewhat on the thought of Fed.R.Civ.P. 56(d).

undecided on the Supreme Court's 2010–2011 docket; and it implicated the statutory and constitutional authority of a bankruptcy judge to determine and order final judgment on "counterclaims by the estate against persons filing claims against the estate," 28 U.S.C. § 157(b)(2)(C). That classification seemingly was the very sort of claim made under Count Two. The Supreme Court's decision was anticipated to be imminent, so that would have to go into the mix as well.

As it turned out, the Supreme Court issued its opinion, *Stern v. Marshall,* 564 U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), on the following morning.[3] The ruling was enunciated in a majority opinion by Chief Justice Roberts. The Court held that the grant of authority to a bankruptcy judge under 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(C), to "hear and determine, . . . and . . . enter appropriate orders and judgments," on "counterclaims by the estate against persons filing claims against the estate," violated Article III of the United States Constitution under the analysis of *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)—at least where "the process of ruling on [the creditor's] proof of claim would [not] necessarily result in the resolution of [the estate's] counterclaim," 564 U.S. at ——, 102 S.Ct. 2858.[4]

When these motions were first brought, they did not float at the abstract height of *Stern v. Marshall.* But now, if the substantive merits are properly addressed at this stage of the litigation, the issue is there—i.e., the judicial authority to direct entry of judgment under the statutory "division of labor"[5] for adjudication in the bankruptcy process. And, it is more pointed because of an ambiguous record created by both parties.

Since the Bankruptcy Amendments and Federal Judgeship Act of 1984, the statutory tracking of judicial authority in a bankruptcy case is twofold.[6] *Stern v. Marshall,* 564 U.S. at ——, 131 S.Ct. 2594. Bankruptcy judges have authority to hear, determine, and direct entry of final orders or judgments in so-called "core proceedings," as enumerated in 28 U.S.C. § 157(b)(2). *Stern v. Marshall,* 564 U.S. at ——, 131 S.Ct. 2594. In a proceeding that is "not a core proceeding but . . . is otherwise related to a proceeding under" the Bankruptcy Code, a bankruptcy judge may hear the parties' submissions; but absent consent of the parties, 28 U.S.C. § 157(c)(2), which must be expressly given, Fed. R. Bankr.P. 7012(b),

> . . . the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the

---

**3.** All further citations to the text of *Stern v. Marshall* will be to the slip opinion. It is too early to get page- or "star"-citations.

**4.** *See also* the opinion's bottom line, at its very conclusion: "The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." 564 U.S. at ——, 131 S.Ct. 2594.

**5.** This is the term used in *Stern v. Marshall,* 564 U.S. at ——, 131 S.Ct. 2594.

**6.** As *Stern v. Marshall* emphasizes, this is not a matter of jurisdiction. 564 U.S. at ——, 131 S.Ct. 2594. Bankruptcy jurisdiction reposes in the United States District Court, under 28 U.S.C. § 1334(a). Under that grant of jurisdiction, the district court may refer bankruptcy cases and proceedings to the bankruptcy judge(s) for the district, who constitute the "bankruptcy court" for the district. 28 U.S.C. §§ 157(a) and 151. In the District of Minnesota, the reference is accomplished by Loc. R. Bankr. P. (D. Minn.) 1070–1.

**496**

bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1); *Stern v. Marshall,* 564 U.S. at ——, 131 S.Ct. 2594.

■■■■ As it turned out, the holding in *Stern v. Marshall* directly applies to this adversary proceeding, given the posture of claims against the bankruptcy estate and the claims and counterclaims in the present litigation. The Trustee now seeks a grant of summary judgment on the estate's breach of contract claim against PNY. The estate's claim was put into suit here, *after* PNY filed its claim in the underlying case(s). By invalidating the grant of final judicial authority under 28 U.S.C. § 157(b)(2)(C), *Stern v. Marshall* puts the styling and tracking of an outcome on the Trustee's motion squarely at issue.[7] Absent consent, a presiding bankruptcy judge will have to suggest a rationale and a possible outcome to the district court, at some appropriate time—*if,* that is, the outcome would be dispositive of Count Two on the present record. With consent, a bankruptcy judge would direct entry of judgment here, i.e., by the clerk of the bankruptcy court.

Unfortunately, the status of that consent is quite unclear. This is particularly unfortunate, because prior attention to reasonably-clear rules would have made this whole exercise unnecessary. *NOTE* the following aspects of the record:

1. In ¶ 4 of his amended complaint, the Trustee stated: "Plaintiff's claims for avoidance of transfers of a Debtor's property and objections to claims are core proceeding [sic] under 28 U.S.C. § 157(b)(2), and Plaintiff's state-law claim for breach of contract is non-core."

2. In n.4 of its since-withdrawn motion for dismissal, PNY asserted: "In the event that the Court dismisses Count 1 [sic] but not Count II, the Court lacks jurisdiction to determine the breach of contract action." It cited to *Marathon Pipe Line.* It also quoted this Court's previous observation: "... a state-law breach-of-contract action by a bankruptcy trustee or Chapter 11 debtor against a non-creditor third party [can] not be heard and finally determined by a

---

7. 28 U.S.C. § 157(b)(2)(C) clearly envisions the "counterclaim" within its scope in the same, broad sense as the Federal Rules of Civil Procedure do—i.e., "any claim that—at the time" when the referent claim is asserted in a court proceeding "—the [referent claimant] has against an opposing party," Fed. R.Civ.P. 13(a)(1). The difference, of course, is that the "counterclaim" in the bankruptcy context will often be raised in its own proceeding and in the first instance, rather than responsively in a legal proceeding in which the referent claim was raised first. It would make no sense to construe it any other way, because the mere filing of a proof of claim does not trigger an adjudicative process in and of itself. 11 U.S.C. § 502(a) ("A claim ..., proof of which is filed under [11 U.S.C. § ] 501 ..., is deemed allowed, unless a party in interest ... objects."); Fed. R. Bankr.P. 3001(f) ("A proof of claim executed and filed

in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). In any event, the estate's breach-of-contract claim is unquestionably a related proceeding under the bankruptcy jurisdiction. As a measure toward the recovery of damages for the estate, i.e., an augmentation of the estate's corpus for payment of creditors' claims, it falls within the broad sweep of related-proceeding status under Eighth Circuit precedent. *See In re Reeves,* 65 F.3d 670, 675 (8th Cir.1995) (action to involuntarily liquidate debtor's closely-held corporation, as measure "in order to realize the value of the estate's shares," is related proceeding; quoting *Matter of Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir.1987) (action is related to bankruptcy case if "it affects the amount of property available for distribution ...")).

federal judicial officer who [is] not protected by life tenure conferred under Article III of the Constitution ..." *In re Marine Iron & Shipbuilding Co.,* 104 B.R. 976, 982 (D.Minn.1989) (citing *Marathon Pipe Line*). However, there was no affirmative statement of lack of consent on PNY's part; nor was there any acknowledgment that PNY was *not* a "non-creditor third party," having already filed its proofs of claim.

3. Then, in the text of its cross-motion for partial summary judgment, PNY reprises, verbatim, the first sentence and citation from n.4 of the earlier motion for dismissal, as summarized above. Again, there is no affirmative statement of consent or lack of consent to subject Count II to final judgment at the order of a bankruptcy judge.

4. Despite the broaching of the issue toward the end of the hearing, with specific reference to its gravity in light of *Stern v. Marshall,* PNY's counsel did not make any express statement then, as to his client's consent or the lack thereof.

This all made for a tangle, complicated over time by the subsequent entry of decision in *Stern v. Marshall.*

In the first instance, the Trustee formally complied with the requirement of Fed. R. Bankr.P. 7008(a),[8] by his act of expressly categorizing Count II. But, he did not make an express statement of consent or non-consent "to entry of final orders or judgment by the bankruptcy judge." And, per *Stern v. Marshall,* 564 U.S. at ——,

131 S.Ct. 2594, he categorized Count II wrongly in *statutory* terms.

After that, PNY was oddly and completely derelict in its pleading duty under Fed. R. Bankr.P. 7012(b). Its later statements-in-briefing reflect a certain attitude on the issue of judicial authority over Count II, but they wrongly categorize the issue itself as one of "jurisdiction." And PNY misses the boat entirely, were the issue one of the exercise of the bankruptcy jurisdiction by the federal courts; even the breach of contract action in *Marathon Pipe Line* would fall within related-proceeding jurisdiction under 28 U.S.C. § 1334(b). *See* authorities cited in n.7 *supra.*

Then, of course, the rule enunciated in *Stern v. Marshall* validated the complaint's categorization of Count II, at least on the plane of constitutionally-founded judicial authority. Count II is obviously to be *treated* as a related proceeding, the outcome of which "could conceivably have [an] effect on the estate being administered in bankruptcy," *Celotex Corp. v. Edwards,* 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), when it is submitted for decision to the judge(s) empowered to order a final judgment under the district court's bankruptcy jurisdiction. But the class of judicial officer to order judgment, under the allocation of authority within the federal courts, is still indeterminate due to the paucity and inconsistency of the parties' input on the issue.

None of this goes to the merits. However, it must be settled at some point in this litigation, and the steps toward that should be started now. If PNY does con-

---

8. In pertinent part, this rule provides:
   In an adversary proceeding before a bankruptcy judge, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders of judgment by the bankruptcy judge.

sent to entry of final judgment on Count II at the order of the bankruptcy judge, the final disposition of that count can be made at the bankruptcy court level—whether that final decision is to be made now, on the submissions to date, or later. If PNY does not consent, the entry of final judgment on Count II must be made in the district court, after the procedural prerequisites mandated by 28 U.S.C. § 157(c)(1) and Loc. R. Bankr. P. (D. Minn.) 9033–1.

In any event, judgment will not be entered on Count II before the other two counts are ripe for entry of judgment, after the submission of their issues and the rendering of decision on them. *See In re Lumbar*, 446 B.R. 316, 332 (Bankr.D.Minn. 2011), and Eighth Circuit precedent construing Fed.R.Civ.P. 54(b) cited therein. Counts I and III have not been submitted to the Court for decision as yet, so any discrete adjudication on Count II made on motion would only result in an interim memorialization of a rationale for an outcome. Formal entry of judgment would be reserved pending the making of decision on the other two. And, yes, if PNY does not consent to submit Count II to a bankruptcy judge, the two-forked and unavoidable assignment of judicial authority presents other conundra as to the mechanics for entry of a single, consolidated judgment at that point. Those are not ripe at this point, and are reserved to another day.

IT IS THEREFORE ORDERED:

1. Counsel for the Plaintiff–Trustee and for Defendant PNY shall file express written statements as to whether their clients consent to entry of a final judgment on Count II on order of a bankruptcy judge, by *July 21, 2011.*

2. After that, the Court will take under advisement the parties' cross-motions for summary judgment and all associated requests for relief.